**Oral Argument Not Yet Scheduled**

**Nos. 16-7070**

---

# United States Court of Appeals
# for the District of Columbia Circuit

---

Demetra Baylor,

*Appellant*

v.

Mitchell Rubenstein & Associates, P.C.,

*Appellee*

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CASE NO. 13-CV-1995-ABJ, HON. Amy Berman Jackson**

---

*OPENING BRIEF* OF THE APPELLANT

**FOR APPELLANT**
CONSUMER JUSTICE ESQ
Radi Dennis
1750 Pennsylvania Avenue, # 27081
Washington, D.C. 20038
Telephone: (202) 579-1243
Facsimile: (202) 644-5270
rdennis@consumerjusticeesq.com
*Counsel for Appellant-Appellee*
*Demetra Baylor*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to this Court's Circuit Rule 28(a)(1), counsel for Appellant

Demetra Baylor hereby certifies that:

### (A) Parties and Amici

The parties in interest in this case are the Petitioner, Demetra Baylor, and

Respondent, Mitchell Rubenstein & Associates, P.C. all of whom appeared before

the District Court. No party intervened in the District Court or in this Court.

### (B) Rulings Under Review

Appellant seeks review of the District Court's Order of July 8, 2014 (Docket

#26) followed by a memorandum of opinion issued the same day (Docket #27) by

the Honorable Amy Berman Jackson, the Magistrate's Report and

Recommendation dated October 24, 2014 (Docket #45) by the Honorable Deborah

A. Robinson, Minute order (December 19, 2014) by the Honorable Amy Berman

Jackson, Order of January 6, 2015 (Docket #54) followed by a memorandum of

opinion issued the same day (Docket #55) by the Honorable Amy Berman Jackson,

Magistrate's Orders dated June 29, 2015 and July 31, 2015 (Docket #s 75, 81, 82)

by the Honorable Michael G. Harvey, Order of August 28, 2015 followed by a

memorandum of opinion issued on September 17, 2015 (Docket #101) by the

Honorable Amy Berman Jackson, Order dated March 31, 2016 (Docket #107)

followed by a memorandum of opinion issued the same day (Docket #108) by the

Honorable Amy Berman Jackson and Order dated April 27, 2016 (Docket #115) by the Honorable Amy Berman Jackson.  To the extent that any Order identified herein is construed to incorporate any other Orders entered prior to the date of a specific Order or Judgment named, such Orders are also appealed from.

*(C) Related Cases*

This case was previously before this Court on July 1, 2015 as case No. 15-7018 when the panel granted Appellee's Motion to Dismiss finding the Order appealed not being a final order.  To counsel's knowledge there are no related cases currently pending before this Court or any other court.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................7

GLOSSARY OF ACRONYMS AND ABBREVIATIONS ..................13

STATEMENT OF JURISDICTION..............................................14

RELEVANT STATUTORY PROVISIONS ....................................14

STATEMENT OF THE ISSUES..................................................15

STATEMENT OF THE CASE.....................................................16

STATEMENT OF FACTS ..........................................................18

SUMMARY OF ARGUMENT ....................................................19

STANDARD OF REVIEW ........................................................21

ARGUMENT ..........................................................................24

I.      THE TRIAL COURT ABUSED ITS DISCRETION BY
        DEPARTING FROM A WELL-ESTABLISHED BODY OF
        JURISPRUDENCE FOR AWARDING ATTORNEY FEES TO
        PROTECT IMPORTANT RIGHTS UNDER THE FAIR DEBT
        COLLECTION PRACTICES ACT ..................................24

   A.   Fee-Shifting Provisions Serve An Important Public Purpose and Fee
        Awards and Must Be Sufficient To Attract Qualified Attorneys To
        Accept The Substantial Financial Risk Of Non-Payment Inherent In
        Fee-Shifting Cases.................................................................26

   B.   The Trial Court's Proportionality Justification for Reducing Plaintiff's
        Attorney Fees by 85 percent and 50 percent Undermines the Important
        Legislative Goals Embodied in the Fair Debt Collection Practices Act
        and Amount to Criminal Sanctions Against Plaintiff ........................28

   C.   Proportionality is Rejected by Courts Because It Undermines
        Enforcement Of Fee-Shifting Statutes That Protect Many Important
        Rights...................................................................................30

   D.   The Lodestar Amount is Presumed Reasonable Unless the Defendant
        carries its Burden of Showing Why the Figure Should be Adjusted
        Downward .............................................................................32

i.      The Trial Court Abused Its Discretion By Improperly Applying Contempt Sanctions via its Percentage Reductions to Lower the Lodestar Fee. ........................................................................ 34

ii.     The Trial Court Abused Its Discretion By Ruling that Plaintiff Violated the February 11th Order Without Fair Notice and a Hearing ........................................................................ 40

iii.    A Fee Award Based On Lodestar Is Reasonable Even If Not All Claims Succeed........................................................................ 43

G.      The Trial Court Abused Its Discretion By Penalizing Plaintiff When Defendant's Scorched Earth Litigation Tactics to the Point of Being Sanctioned By the Trial Court—Not Unnecessary Litigation By Plaintiffs—Drove Up Fees ..................................................................45

H.      Plaintiff's Fee Request are Reasonable for this Circuit and Others and Defendant has No Credible Support for Its Argument that Plaintiff's Request for Fees is Excessive and Should Be Denied Outright .........50

II.     **DC CONSUMER PROTECTION AND PROCEDURES ACT ...53**

A.      The DC Consumer Protection and Procedures Act Applies to Debt Collectors.............................................................................53

i.      Statutory Interpretation ........................................................ 55

B.      Debt Collection is a Trade Practice under the DCCPPA ....................55

i.      Debt Collection is a Trade Practice within the Plain Language of the Act..................................................................... 56

ii.     Other provisions of the Act using equivalent language confirm that Debt Collection is a Trade Practice ............................. 59

iii.    Section 1-350.10 of the D.C. Code confirms that Debt Collection is a Trade Practice subject to the Act............................... 61

III.    **THE TRIAL COURT DECIDED MATERIAL ISSUES OF FACT AND IMPROPERLY GRANTED SUMMARY**

JUDGMENT ON PLAINTIFFS DISTRICT OF COLUMBIA
DEBT COLLECTION LAW CLAIMS ..........................................62

A.    The Trial Court Erred in Denying Plaintiff's Motion for Summary
      Judgment as to Willfulness ................................................62

B.    The Trial Erred in Granting Summary Judgment to MRA as to
      Willfulness............................................................................65

IV.   NO ATTORNEY-CLIENT PRIVILEGE EXIST BETWEEN A
      DEBT COLLECTION AGENCY AND THE DEBT
      COLLECTION LAW FIRM IT HIRES ON BEHALF OF A
      THIRD-PARTY CLIENT .................................................68

A.    Sunrise Cannot be an Agent of Arrowood for Purposes of Attorney-
      Client Privilege....................................................................68

B.    Arrowood Knowingly Waived Any Attorney-Client Privilege If Such
      Privilege Ever Attached ......................................................71

C.    Sunrise's Engagement in the Unauthorized Practice of Law Prevents
      any Attorney-Client Privilege from Attaching....................73

D.    The Trial Court Erred in Not Awarding Plaintiff Attorney Fees In
      Relation to her Motion to Compel ......................................75

V.    PLAINTIFF REQUESTS ATTORNEY FEES IN CONNECTION
      WITH THIS APPEAL .....................................................76

CONCLUSION............................................................................77
REQUEST FOR ORAL ARGUMENT .......................................77
CERTIFICATE OF COMPLIANCE.........................................78
CERTIFICATE OF SERVICE .................................................78

# <u>TABLE OF AUTHORITIES</u>

**Cases**

Action on Smoking and Health v. C.A.B., 724 F.2d 211 (D.C.Cir.1984)...............48

Adickes v. S. H. Kress & Co., 398 U. S. 144 (1970) ...............................63

Agere Sys., Inc. v. Advanced Envtl. Tech. Corp., 602 F.3d 204, 216 (3d Cir. 2010)

...................................................................................20

Alexander v. FBI, 192 F.R.D. 42, 45 (D.D.C.2000)..................................66

American Civil Liberties v. U.S. Dept. of Homeland Sec., 810 F.Supp.2d 267

(D.D.C. 2011) .................................................................48

American Lands Alliance et al  v. Norton, 525 F.Supp.2d 135 (2007)..................48

Anderson v. AB Painting & Sandblasting Inc., 578 F.3d 542, 544 (7th Cir. 2009)20

Badeen v. PAR, Inc., 853 N.W.2d 303 (Mich. 2014)..............................67

*Bebchick v. Washington Metropolitan Area Transit Comm'n, 805 F.2d 396

(D.C.Cir.1986) ............................................................ 30, 33

*Beck v. Test Masters Educ. Servs., Inc, 289 F.R.D. 374 (D.D.C. 2004) .............73

Beecham v. United States, 511 U.S. 368, 372 (1994) ..............................54

Bell v. United Princeton Properties, 884 F.2d 713 (3d Cir.1989) ..................33

Blackman, et al., v. District of Columbia, et al. 677 F.Supp.2d 169 (2010) .... 48, 54

*Blum v. Stenson, 465 U.S. 886, 898, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891

(1984).................................................................. 24, 30, 42

Brinker v. Giuffrida, 798 F.2d 661 (3d Cir. 1986) ................................47

Camacho v. Bridgeport Fin., Inc. 2007 WL 1302731 (N.D. Cal. May 2, 2007).....49

Caputo v. Professional Recovery Servs., Inc., 2004 WL 1503953 (D. Kan. June 9,

2004).........................................................................49

Carroll v. Wolpoff & Abramson, 53 F.3d 626 (4th Cir. 1995) ...............21

Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1057-60 (2d Cir. 1989).............................................................................................49

Chevron Corp. v. The Weinberg Group, Misc. Action No. 11-409 (Sept. 26, 2012) .................................................................................................68

Clarke v. Whitney, 3 F. Supp. 2d 631(E.D. Pa. 1998) .............................................41

Cobell v. Norton, 226 F.R.D. 67, 87 (D.D.C.2005) ..................................................68

Cohen v. West Haven Board of Police Commissioners, 638 F.2d 496, 506 (2d Cir. 1980)......................................................................................... 20, 73

*Copeland v. Marshall, 641 F.2d 880 (D.C.Cir.1980) ...................... 23, 33, 41, 42

*Covington v. District of Columbia, 57 F.3d 1101 (D.C. Cir. 1995)............... 30, 32

Crane v. Crane, 614 A.2d 935 (D.C. 1992) ......................................................67

Crommie v. P.U.C. (N.D. Cal. 1994) 840 F.Supp. 719 ...........................................43

Dada v. Mukasey, 554 U.S. 1, ___, 128 S.Ct. 2307, 2317, 171 L.Ed.2d 178 (2008). .................................................................................................57

*DeBerry v. First Government Mortg and Investors Corp, 743 A.2d 699, 700 (D.C. 1999) ......................................................................................... 54, 55

Defenders of Wildlife v. Gutierrez, 532 F.3d 913, 918 (D.C. Cir. 2008) ..............21

Democratic Party of Washington State v. Reed, 388 F.3d 1281, 1287 (9th Cir.2004) .................................................................................................46

Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326 (1980)......................................23

Diamond Ventures, LLC v. Barreto, 452 F.3d 892 (D.C. Cir. 2006).....................34

DiFilippo v. Morizio, 759 F.2d 231 (2d Cir.1985)........................................... 19, 26

District Intown Props. Ltd. P'ship v. District of Columbia, 198 F.3d 874, 878 (D.C.Cir.1999).........................................................................................63

Dowling v. Litton Loan Servicing LP, 320 Fed. App'x 442 (6th Cir. 2009)...........22

Dunaway v. JBC & Assocs. Inc., 2005 WL 3465665 (E.D. Mich. Dec. 19, 2005..49

E.I. du Pont de Nemours & Co., v. Forma-Pack, Inc., 718 A.2d 1129 (D. Md. 1998) ................................................................................................66

Edgerton v. State Personnel Bd. (2000) 83 Cal.App.4th 1350 ...............................42

Environmental Defense Fund Inc. v. Environmental Protection Agency, 672 F.2d 42 (D.C.Cir.1982) ..............................................................................................30

First Gov't Mortg. & Investors Corp., 225 F.3d 738, 746 (D.C. Cir. 2000) ..........41

Garcia v. Resurgent Capital Services, L.P. et al, No. C-11-1253 EMC ................49

Gates v. Deukmejian, 987 F.2d 1392, 1397-98 (9th Cir. 1992) ..............................47

Gonzales v. Arrow Fin. Servs., LLC, 660 F.3d 1055 (9th Cir. 2011) ....................22

Grant v. Bethlehem Steel Corp.,973 F.2d 96, 101-02 (2d Cir.1992) .....................49

Grant v. Martinez, 973 F.2d 96 (2d Cir. 1992) ......................................................48

Grayson v. AT&T Corp., 15 A.3d 219, 244-45 (D.C. 2011) .................................51

Graziano v. Harrison, 950 F.2d 107, 113 (3d Cir.1991).........................................22

Greene v. Dalton, 164 F.3d 671, 675 (D.C.Cir.1999) ...........................................63

Greenlaw v. United States, 554 U.S. 237, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008) ................................................................................................................25

H. G. Smithy Co. v. Washington Medical Center, Inc., D.C.App., 374A.2d 891, 893 (1977)........................................................................................................66

Heintz v. Jenkins, 514 U.S. 291, 298, 115 S.Ct. 1489, 131 L.ED.2d 395 (1995)..54, 57

Henggeler v. Brumbaugh & Quandahl, P.C. et al, Civ. No. 8:11CV334 (EMC)....49

Hensley v. Eckerhart, 461 U.S. 424 (1983) .......................................... 20, 22, 33, 41

Heritage Pacific Financial, LLC. v. Monroy, 215 Cal.App.4th 972 (2013) 156 Cal. Rptr. 3d 26 (March 29, 2013). ........................................................................49

In re Lindsey, 148 F.3d 1100, 1106 (D.C.Cir.1998) ..............................................68

In re Mbakpuo, 829 A.2d 217 (D.C. 2003)............................................................70

Int'l Longshoremen's Ass'n v. Phila. Marine Trade Ass'n, 389 U.S. 64, 76 (1967) ..................................................................................................37

*J.H. Marshall & Associates, Inc. v. Burleson, 313 A.2d 587, 595 (D.C. 1973)...66, 71

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, et al, 130 S.Ct. 1605 (2010)................................................................... 24, 53

Johnson v. Zerbst, 304 U.S. 458, 464 (1938) ..........................................69

Jones v. Dufek, No. 15-7013, p.9 (D.C. Cir. July 26, 2016............................. 50, 51

Judicial Watch v. U.S. Dept. of Commerce, 470 F.3d 363 (D.C. Cir. 2006)..........48

Kennecott Utah Copper Corp. v. U.S. Dept. of Interior, 88 F.3d 1191, 1231 (D.C. Cir. 1996)..................................................................58

King v. Palmer, 950 F.2d 771 (D.C.Cir.1991) ..........................................34

Laborers' Int'l Union of N. Am. v. Brand Energy Servs. LLC, 746 F. Supp. 2d 121 (D.D.C. 2010) ..................................................................31

Laffey v. Northwest Airlines, 746 F.2d 4 (D.C.Cir.1984)..................................32

Lee  v. Javitch, Block & Rathbone, LLP, 568 F.Supp.2d 870 (2008)....................48

Lipsett v. Blanco, 975 F.2d 934, 941 (1st Cir. 1992) ...................................46

Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir.1994) ...................................19

Miller v. Holzmann, 575 F.Supp.2d 2, 33 (D.D.C.2008) .........................................41

Murray v. Weinberger, 741 F.2d 1423 (D.C.Cir.1984).........................................32

Nat'l Ass'n of Concerned Veterans v. Sec'y of Def., 675 F.2d 1319, 1337-38 (D.C.Cir. 1982)................................................................ 30, 47

New York State Dept. of Social Servs. v. Dublino, 413 U. S. 405, 419–420 (1973) ..................................................................................................52

Norden v. Clough, 674 F.Supp.2d 126 (D.C. Cir. 2009),.......................................48

Norton v. Wilshire Credit Corp., 36 F. Supp. 2d 216, 220 (D.N.J. 1999)..............49

Orchano v. Advanced Recovery, Inc., 107 F.3d 94 (2d Cir.1997)( ................. 20, 26

Owen v.City of Independence, 445 U. S. 622, 654 (1980).......................................45

Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546 (1986)................................................................................................. 19, 30

Pickett v. Sheridan Health Care, 664 F.3d 632, 638-40 (7th Cir.2011) .................20

Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22 (2d Cir. 1989).................21

Poole v. Kelly, 954 F.2d 760, 761 (D.C.Cir. 1992 ...................................................54

Rice v. City of Chicago, 333 F.3d 780 (7th Cir. Ill. 2003)......................................40

Roadway Express, Inc. v. Piper, 447 US 752 (1980) ..............................................37

Rode v. Dellarciprete, 892 F.2d 1177 (3d Cir.1990) .......................................... 33, 41

Rodriguez-Hernandez v. Miranda-Velez, 132 F.3d 848, 860 (1st Cir. 1998)........46

Sage v. Broadcasting Publications, Inc., 997 F.Supp. 49, 53 (D.D.C. 1998)..........63

Sierra Club v. Environmental Protection Agency,769 F.2d 796 (D.C.Cir.1985)....32

Snowder v. District of Columbia, 949 A.2d 590, 599 (D.C.2008)..........................52

Taylor v. F.D.I.C., 132 F.3d 753, 763 (D.C.Cir.1997) ...........................................63

*Tolentino v. Friedman, 46 F.3d 645 (7th Cir. 1995) .......................... 21, 27, 29, 47

U.S. v. Eleven Vehicles, 200 F.3d 203 (3d Cir.2000) .............................................34

United States v. Menasche, 348 U.S. 528, 538-39 (1955).......................................57

United States v. Zolin, 491 U.S. 554, 563, 109 S.Ct. 2619, 2626, 105 L.Ed.2d 469 (1989)...........................................................................................................70

Ventro v. IRS, 714 F. Supp. 3d 137, 151 (D.D.C. 2010) ........................................68

Washington Post Co. v. U.S. Dep't of Health & Human Servs., 865 F.2d 320, 325 (D.C.Cir.1989)............................................................................................59

Williams v. First Gov't Mortgage & Investors Corp., 225 F.3d 738 (D.C. Cir. 2000).............................................................................................................27

Wolf v Frank, 555 F2d 1213, 1217 (5th Cir 1977)..................................................42

Zelaya v. UNICCO Service Company, 682 F.Supp.2d 28, 38 (D.D.C. 2010)........66

**Statutes**

15 U.S.C. § 1692.................................................................................61

28 U.S.C. § 1291.................................................................................14

D.C. Code § 1-350-10..........................................................................61

D.C. Code § 28-3901(a)(6)...................................................................58

D.C. Code § 28-3905(k)(1)...................................................................60

D.C. Code §28-3901(b)(1)....................................................................55

D.C. Code §28-3901(c).........................................................................55

\* Authorities upon which we chiefly rely are marked with asterisks

## <u>GLOSSARY OF ACRONYMS AND ABBREVIATIONS</u>

FDCPA – Fair Debt Collections Practices Act
CPPA  – District of Columbia Consumer Protections and Procedures Act
DCRA – Department of Consumer and Regulatory Affairs
DCDCL – District of Columbia Debt Collection Law
FTC – Federal Trade Commission
MRA – Mitchell Rubenstein & Associates, P.C.
Sunrise – Sunrise Credit Services

## STATEMENT OF JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1291 because the district court's March 31, 2016 and April 27, 2016 Orders appealed from granted Appellee's motion for summary judgment [JA 281] and denied Appellants Motion for Reconsideration. [JA 282]  The District Court's granting of Appellee's motion for summary judgment is a final, appealable order. Ms. Baylor filed a timely notice of appeal on May 26, 2016.

## RELEVANT STATUTORY PROVISIONS

Pertinent Statutes and Regulations appear in the statutory addendum to this brief.

## STATEMENT OF THE ISSUES

1. Whether the District Court abused its discretion in applying substantial percentage reductions of the hours claimed in Plaintiff's attorney fee motions and denying Plaintiff's request for attorney fees in relation to Plaintiff's Objections to the Magistrate's Report and Recommendation.

2. Whether the District Court erred by dismissing Plaintiff's claims under the District of Columbia Consumer Protection and Procedures Act based on its conclusion that debt collection is not a trade practice within the meaning ascribed thereto in the Act.

3. Whether the District Court erred in concluding that communications between a debt collection attorney and the debt collection agency that hired the attorney as a debt collector, allegedly on behalf of a non-party client, are protected as attorney client privilege or work product.

4. Whether the District Court erred in denying Plaintiff attorney fees in relation to Plaintiff's Motion to Compel.

5. Whether the District Court erred in denying Plaintiff's Motion for Partial Summary Judgment and granting Defendant's Motion for Summary Judgment as to Plaintiff's claims under the District of Columbia Debt Collection Law based on the court's conclusion that substantial evidence does not exist proving that

Defendant's acts were "willful" as a matter of law or that there is no issue of material fact as to the willfulness of Defendant's conduct as a matter of law.

6.  Whether based on the record a material question of fact exists as to whether Plaintiff suffered actual damages within the meaning of the District of Columbia Debt Collection Law.

## STATEMENT OF THE CASE

MRA has employed its scorched earth litigation tactics, in the face of clear liability, since the beginning of this litigation 2013. Plaintiff sent four settlement offers to MRA prior to initiating this action.  An initial demand letter was sent on October 21, 2013 offering to settle this matter for $10,000 inclusive of attorney fees, after rejecting an counter offer by MRA of $1,000 Plaintiff sent another offer on October 31, 2013 and a final counter offer to settle the matter on November 12, 2013 for $7,500 inclusive attorney fees. *See* JA 420.  MRA rejected the offer informing Plaintiff that it would send a Rule 68 offer to Plaintiff soon after receiving the complaint.  *See* JA 423.  Rather than simply accepting the very reasonable $7,250 offer when MRA knew that it would be accepting full liability MRA forced Plaintiff to draft, research and file a complaint.  MRA sent its Rule 68 offer but the offer was delayed by USPS in reaching Plaintiff.[1]  In the meantime,

---

[1] It is unclear when notice of the letter was delivered to Plaintiff counsel's post office box. MRA's Rule 68 offer did not arrive at Plaintiff counsel's post office

MRA filed a Motion to Dismiss requesting dismissal of all the claims in this action including seven pages of briefing on just the FDCPA claims.  MRA filed its motion to dismiss <u>after</u> it sent its Rule 68 offer and in light of the fact that it had admitted liability for the FDCPA claims in the Rule 68 offer.

MRA also, in a transparent attempt to distort the record to falsely reflect satisfaction of the Rule 68 judgment, attempted to force Plaintiff to file a premature satisfaction of judgment by filing a frivolous Rule 60(b)(5) motion and a request for sanctions that was denied by the trial court. *See* JA 67 – 69.  It continues this strategy with the instant appeal.   .

The trial court also admonished MRA stating that "Defendant's opposition to [Plaintiff's motion to file a surreply] was entirely unnecessary" and stating that Defendant's "motion for sanctions…was uncalled for." *See* JA 68.  The trial court also took issue with Defendant filing an opposition to Plaintiff's amended fee request "despite the fact that it was explicitly permitted by the Court." *See* JA 149.

---

until January 17, 2014 – ten days after MRA appears to have mailed the Offer.  It can take a couple of days after arrival at the post office for the mail to actually be distributed to the intended recipient. Additionally, January 17, 2014 was a Friday and the following Monday was January 20th, a national holiday in honor of Dr. Martin Luther King Jr., which made Tuesday January 21st the next business day. If it took the clerk, after a long holiday weekend, a couple of days to distribute the mail a notice would not have appeared until January 23, 2014. Plaintiff's counsel was served the Offer on January 29th.  MRA did not mail the Rule 68 offer until January 7, 2014.

MRA also filed a completely unsupported bill of costs again forcing Plaintiff to file objections.  *See* JA 18.

Plaintiff has been litigating this case for three years.

## STATEMENT OF FACTS

The facts construed in the light most favorable to the Plaintiff is MRA is a debt collection law firm that was retained by Sunrise Credit Services, Inc.  to collect an alleged debt from Demetra Baylor.  MRA sent four collection letters to Ms. Baylor.  Each of the letters were riddled with errors including incorrect interest rates, incorrect names (in multiple instances) of the alleged creditor, inaccurate amounts (in multiple letters), sent on the letterhead of MRA and a different firm named Rubenstein & Cogan which MRA claims is a "trade name," etc.  MRA also sent a letter to Ms. Baylor after the undersigned had informed it in writing that Ms. Baylor was represented by counsel and all communications should be directed to counsel.

After realizing the multiple violations by MRA, Ms Baylor sent a demand letter alleging violations of the Fair Debt Collections Practices Act, the District of Columbia Consumer Protection Act and the District of Columbia Debt Collection Law.  Ms. Baylor requested damages of $10,000 including attorney fees.  MRA responded to Ms. Baylor with a counteroffer of $1000 inclusive of attorney fees.  Ms. Baylor then countered with an offer of $7500.  MRA counter offered with a

$2000 offer inclusive of attorney fees. After Ms. Baylor declined the $2000 offer, MRA repeated the same offer and informed Ms. Baylor that it will file a Rule 68 offer soon after she filed a complaint.  The settlement negotiation ended.  MRA has filed multiple unsubstantiated motions and stonewalled relating to its discovery response.  MRA files motions on a whim causing Plaintiff to file a response.  MRA has dragged this case out as a litigation strategy.  It has repeatedly held unreasonable settlement positions and has caused Plaintiff to extend an enormous amount of time in this action.

## SUMMARY OF ARGUMENT

The trial court abused its discretion in substantially reducing Plaintiff's lodestar attorney fee using improper factors that are inapplicable to determining a mandatory reasonable fee in accordance with a fee-shifting statute.  The trial court further abused its discretion not according Plaintiff due process in the form of fair notice and a hearing prior to imposing sanctions for violation of a court order specifically directed to a surreply.  The trial court further abused its discretion by relying on clearly erroneous findings of fact and conclusions of law as is evidenced by the record and the motion practice in this action.  For example, though Plaintiff excluded work on the state law claims from her fee petition, the trial court reduced Plaintiff's lodestar amount based on work on state law claims.  The trial court also erroneously found that Plaintiff's "opposition – confined to less than one page of

text" and applied a percentage reduction based on that conclusion. [JA 99]. The trial court also erroneously found that "Plaintiff spent 87 hours disproving the numerous claims and defenses averred by Defendants in spite of the fact that Defendants had already offered to accept judgment on said claims." [JA 100]. The trial court ignores the fact that Plaintiff drafted and filed her opposition without any knowledge that MRA had sent a Rule 68 offer. Such conclusion is also irrelevant as Plaintiff cannot be expected to run a law practice based on the whims and time schedule of opposing counsel. The trial court further abused its discretion by improperly using proportionality and sanctions as factors to drastically reduced Plaintiff's fee petition by 85 and 50 percent.

The trial court erred in dismissing Plaintiff's CPPA claims based on its conclusion that debt collection is not a trade practice under the CPPA. The legislative history and the plain language of the statute proves that debt collection is a trade practice.

The trial court also erred in granting MRA's motion for summary judgment as MRA failed to provide any *evidence* proving that it deserved summary judgment as a matter of law. MRA produced a conclusory self-serving affidavit by the managing partner of the law firm attaching unauthenticated documents and hearsay as support. The Rubenstein affidavit is the only "evidence" relied on by the trial court to grant MRA's motion for summary judgment.

The trial court further erred in denying Plaintiff's motion to compel as to the documents and information contained on MRA's privilege log and in denying Plaintiff's request for attorney fees.  The information in MRA's privilege log is not privileged because MRA is a debt collector and all the communications where made to another third party debt collector as oppose to the entity MRA claims is its client.  As such, the communications are not privilege because there is no attorney-client relationship because the collection agent has interposed itself between the alleged attorney and the alleged client.

## STANDARD OF REVIEW

This Court's review of a grant of summary judgment is de novo. *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C.Cir.2007). The Court's review of the denial of a Rule 59(e) motion is for abuse of discretion, see *Messina v. Krakower*, 439 F.3d 755, 759 (D.C.Cir.2006). "A judge's discretion is not boundless and must be exercised within the applicable rules of law or equity." *Blackwelder Furniture Co. v. Seilig Mfg. Co.,* 550 F.2d 189, 193 (4 Cir.1977) (Craven, J.). We "review the award or denial of attorney's fees for abuse of discretion, but any elements of legal analysis and statutory interpretation which figure in the district court's decision are reviewable de novo." *Coalition for Clean Air v. Southern California Edison Co*., 971 F.2d 219, 229 (9th Cir.1992). We "will reverse if the district court misperceives or misapplies the law governing fee awards." *Id*. (quoting *Tolentino*

*v. Friedman*, 46 F.3d 645, 651 (7th Cir.1995)). Attorney fee awards by the District Court are reviewed using the abuse of discretion standard. *Copeland v. Marshall*, 641 F.2d 880, 901 (D.C.Cir. 1980) (en banc). "Because '[a] district court by definition abuses its discretion when it makes an error of law,' '[t]he abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.'" See *Diamond Ventures, LLC v. Barreto*, 452 F.3d 892, 895 (D.C. Cir. 2006) quoting *Koon v. United States*,518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)

Abuse of discretion' is not the equivalent of 'unreviewable,'"*id*., and it is important that we "be informed by the record of why the district court acted as it did," *id*. There is "[a] strong presumption that the lodestar figure ... represents a `reasonable' fee," *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,478 U.S. at 565, 106 S.Ct. at 3098; accord *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir.1994) (per curiam), for "[i]f private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court," S.Rep. No. 94-1011, at 2 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5910. Accordingly, '[w]henever the district court augments or reduces the lodestar figure it must state its reasons for doing so as specifically as possible," *DiFilippo v. Morizio*, 759 F.2d at

234; see *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941 (district court should be sure to provide "a concise but clear explanation of its reasons for the fee award"); *Cohen v. West Haven Board of Police Commissioners*, 638 F.2d at 505, for "[i]n the absence of such a statement, it will be difficult, if not impossible, for the reviewing court to determine whether the award was within the proper exercise of the district court's discretion," *id*. at 505-06. *Orchano v. Advanced Recovery, Inc.*, 107 F.3d 94, 99 (2d Cir.1997). "An abuse of discretion occurs when the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." See *Agere Sys., Inc. v. Advanced Envtl. Tech. Corp*., 602 F.3d 204, 216 (3d Cir. 2010)

"We review the district court's award of attorney's fees for abuse of discretion and its legal analysis and methodology de novo." *Pickett v. Sheridan Health Care*, 664 F.3d 632, 638-40 (7th Cir.2011); *Anderson v. AB Painting & Sandblasting Inc*., 578 F.3d 542, 544 (7th Cir. 2009). Because this is a dispute about the correct calculation of plaintiff's "reasonable attorney's fee" as set by the lodestar, "plus costs,' 29 U.S.C. § 216(b), our review will follow the three determinations required to set that figure: (1) the number of hours reasonably expended by plaintiff's counsel, (2) the reasonable hourly rate for those services, and (3) costs." See *Anderson*, 578 F.3d at 544 (citing *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933).

This Court reviews "de novo the district court's grant of….motion['s] for partial summary judgment."  See  *Defenders of Wildlife v. Gutierrez*, 532 F.3d 913, 918 (D.C. Cir. 2008)

## **ARGUMENT**

**I.     THE TRIAL COURT ABUSED ITS DISCRETION BY DEPARTING FROM A WELL-ESTABLISHED BODY OF JURISPRUDENCE FOR AWARDING ATTORNEY FEES TO PROTECT IMPORTANT RIGHTS UNDER THE FAIR DEBT COLLECTION PRACTICES ACT**

Plaintiffs who prevail under the Fair Debt Collection Practices Act are entitled to an award of costs and reasonable attorney's fees. 15 U.S.C. § 1692k(a)(3); *Tolentino v. Friedman,* 46 F.3d 645, 651 (7th Cir. 1995) (holding that the award of attorney's fees to plaintiffs for a debt collector's violation of "any provision" of the FDCPA is mandatory….. The statutory language makes an award of fees mandatory. "Because the FDCPA was violated * * * the statute requires the award of costs and a reasonable attorney's fee * * *."  The reason for mandatory fees is that congress chose a "private attorney general" approach to assume enforcement of the FDCPA); see *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 28 (2d Cir. 1989); *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 628-29 (4th Cir. 1995)(an award of attorney's fees under the FDCPA is mandatory in the

absence of bad faith conduct on the part of the plaintiff).[2] "Where a plaintiff has

obtained excellent results, his attorney should recover a fully compensatory fee."

*Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (stating that "[n]ormally this will

encompass all hours reasonably expended on the litigation, and indeed in some

cases of exceptional success an enhanced award may be justified.").

The trial court by drastically reducing the hour's requested in Plaintiff's fee

petition has thwarted the will of Congress and the operation of the self-

enforcement mechanism of the FDCPA empowering consumers to act as "private

attorneys general."  At $120 per hour, no competent attorney in the District of

Columbia market will take these types of cases. As it stands now, such cases are

undesirable by the District of Columbia legal market so if you add to that a

substandard rate, lower than rates billed by paralegals, such cases will become

nonexistent as no one could afford to bring them.  If you further add to that the

substantial delay in payment, as is the case here where Plaintiff received a

---

[2] The FDCPA mandates an award of attorney's fees as a means of fulfilling
Congress' intent that the Act should be enforced by debtors acting as private
attorneys general. *Graziano v. Harrison,* 950 F.2d 107, 113 (3d Cir.1991)
*Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011) (noting
that "[t]hough the Federal Trade Commission ("FTC") is empowered to enforce
the FDCPA, Congress encouraged private enforcement by permitting aggrieved
individuals to bring suit as private attorneys general)(citation omitted).  An award
of reasonable attorney's fees under the Act is not discretionary, but mandatory,
even where violations are so minimal that statutory damages are not awarded.
*Dowling v. Litton Loan Servicing LP,* 320 Fed. App'x 442, 446 (6th Cir. 2009);
*Graziano, supra,* 950 F.2d at 113; *Pipiles, supra* 886 F.2d at 28;

judgment of $41,989.80 in attorney fees against MRA almost two years ago and have made multiple requests for payment but has yet to receive a dime of the judgment, such cases are even more undesirable.

### A.     Fee-Shifting Provisions Serve An Important Public Purpose and Fee Awards and Must Be Sufficient To Attract Qualified Attorneys To Accept The Substantial Financial Risk Of Non-Payment Inherent In Fee-Shifting Cases

Attorney fees under Section 1692 of the FDCPA are meant to serve the dual purpose of giving ordinary consumers with limited means access to the judicial system and deterring deceptive and unfair debt collection practices.  This Court emphasized in *Copeland v. Marshall*, 641 F.2d 880, 903 (D.C.Cir.1980) the important public policy vindicated by fee-shifting statutes in civil rights cases and articulated the standard for evaluating fee petitions in the D.C. Circuit. The fee award in this case, as in all fee-shifting cases, must be understood in the overall context of the fee-shifting enforcement mechanism.  Legislatures and courts recognize that in order to serve the intended public benefits of increased enforcement by private litigants, a financial incentive is necessary to entice qualified attorneys to devote their time to complex, time-consuming cases in which they risk non-payment.  *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980) (affirming fee award).

The United States Supreme Court in *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, et al*, 130 S.Ct. 1605 (2010) recently emphasized the importance of self-enforcement of the FDCPA. Specifically noting concern about

> …undermining the FDCPA's calibrated scheme of statutory incentives to encourage self-enforcement. Cf. FTC, Collecting Consumer Debts: The Challenge of Change 67 (2009) ("Because the Commission receives more than 70,000 third-party debt collection complaints per year, it is not feasible for federal government law enforcement to be the exclusive or primary means of deterring all possible law violations").

*Id* at 1624.  Moreover, and contrary to MRA's repeated false assertion about this case being a "simple FDCPA" action, the Supreme Court has recognized the FDCPA as a "comprehensive and complex federal statute."  *Id* at 1615.  As such, this case is complex civil litigation involving multiple issues of first impression for this jurisdiction.  As such, a significant amount of research of this and other circuits is required to reasonably and competently respond to MRA's aggressive defense tactics.

Plaintiff notes to the Court that the amount awarded gives Plaintiff even less than the $175 per hour paralegal rate suggested by MRA in its untimely argument requesting that Plaintiff's rates be reduced.  *See* JA 131.  As such, it is certain that in this jurisdiction an hourly rate of $175 per hour, or the $122 per hour awarded here, would not be "adequate to attract competent counsel" in these types of cases. See *Blum v. Stenson*, 465 U.S. at 897, 104 S.Ct. at 1548).

B.    **The Trial Court's Proportionality Justification for Reducing Plaintiff's Attorney Fees by 85 percent and 50 percent Undermines the Important Legislative Goals Embodied in the Fair Debt Collection Practices Act and Amount to Criminal Sanctions Against Plaintiff**

The Supreme Court in *Greenlaw v. United States*, 554 U.S. 237, 243, 128 S.Ct. 2559, 2564, 171 L.Ed.2d 399, 408 (2008), addressed the propriety, in the appellate context, of a reviewing court ruling upon issues raised sua sponte. The Court admonished:

> In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present…..But as a general rule, "[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief."

The Court further explained that "[Courts] do not, or should not, sally forth each day looking for wrongs to right. We wait for cases to come to us, and when they do we normally decide only questions presented by the parties. Counsel almost always know a great deal more about their cases than we do…" *Greenlaw*, 554 U.S. at 243–44, 128 S.Ct. at 2564, 171 L.Ed.2d at 408. Here, the magistrate raised the sanctions argument sua sponte as the argument was not raised by MRA and Plaintiff was not provided a contempt hearing which is required by due process.

MRA failed both to raise an argument involving reduction of the fees requested but instead made the single argument that fees should be denied outright.

MRA also did not argue that Plaintiff should be sanctioned yet it appears to be the primary basis upon which the magistrate relied to apply the extreme percentage reductions.[3]

Further, the magistrate's failure to explain its specific methodology and rationale supporting the substantial reduction in the number of compensable hours was error. See *Orchano v. Advanced Recovery, Inc*., 107 F.3d 94, 99 (2d Cir.1997)(citing cases). "Whenever the district court augments or reduces the lodestar figure it must state its reasons for doing so as specifically as possible." *Id*. (quoting *DiFilippo v. Morizio*, 759 F.2d 231, 234 (2d Cir.1985)). Here, the magistrate failed to provide any analysis as to how she arrived at the amount of the percentage cuts recommended.  Instead, the magistrate simply and seemingly arbitrarily decided that the 85 percent and the 50 percent reductions were appropriate. In doing so the trial court abused its discretion.  Further, though aware of the statements, the trial court did not consider them worthy of sanctions at the time of issuing its September 11th Order. *See* JA 67.

---

[3] Though the magistrate cited two other reasons: 1) "percentage reductions to account for unproductive, wasteful and duplicative activity;" and 2) "activity with respect to claims other than the one as to which Plaintiff prevailed; such reasons were clearly erroneous based on the record and as concluded by the trial court.  *See* JA 176, n. 4 & 5.  Plaintiff's addresses the mailing and receipt of the Rule 68 offer in n. 2 of this brief.  The filing of Plaintiff's opposition in response to MRA's motion to dismiss where it clearly argues for dismissal of the FDCPA claims cannot legally or factually serve as a valid basis for an 85 percent reduction to Plaintiff's fees and the magistrate and the trial court relying on such basis is an abuse of discretion.

The trial court also appears to have improperly set a maximum limit on the amount of attorney fees it would award in this case given the amount of damages at stake and regardless of the amount of litigation that takes place. *See* JA 416. Attorney fees will never be proportional to the damages awarded in an FDCPA individual case because the maximum damages that can be obtained is $1,000. As such, courts have soundly rejected this proposition.

### C. Proportionality is Rejected by Courts Because It Undermines Enforcement Of Fee-Shifting Statutes That Protect Many Important Rights

The trial court misperceived and misapplied the law governing fee-shifting provisions and therefore abused its discretion. *Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir.1995). This Court has explicitly rejected a proportionality rule in determining fee awards. *Williams v. First Gov't Mortgage & Investors Corp.*, 225 F.3d 738, 746-47 (D.C. Cir. 2000)(holding attorney's fees award in the amount of $199,340 against home refinancing lender for violation of District of Columbia Consumer Protection Procedures Act (CPPA) was reasonable, even though it was disproportionate to borrower's CPPA damages award of $25,200; given public policy interests served by CPPA, court would decline to read rule of proportionality into the statute, as such rule would make it difficult, if not impossible, for individuals with meritorious claims but relatively small potential

damages to obtain redress from courts.  Only hours on unsuccessful TILA claims that "were distinct in every respect" would be excluded). By sanctioning Plaintiff to the tune of 85 and 50 percent reductions of her fee request, the magistrate improperly applied a rule of proportionality to Plaintiff's fee petition.  As the magistrate found that statements made in Plaintiff's motion for fees, as oppose to the surreply referenced in the February 11th Order, violated said order after the trial court had already issued the order granting fees and not found such statements in violation.  *See* JA  67 – 69.

Congress set low statutory damages in most consumer protection statutes to prohibit abusive practices and to mandate fair dealing amongst industry participants. Limiting the amount of fees necessary to accomplish the substantive goals of a consumer protection statute would circumvent the intent of Congress if such fees hinged on the amount of damages recoverable by the consumer. The Fourth Circuit has noted that "[s]ince there will rarely be extensive damages in [a Fair Credit Reporting Act] action, requiring that attorney's fees be proportionate to the amount recovered would discourage vigorous enforcement of the Act." *Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 974 (4th Cir. 1987); *See also City of Riverside v. Rivera* 477 U.S. 561, 564 (1986). In affirming the $245,450 award of fees the Supreme Court stressed that "[a] rule of proportionality would make it difficult, if not impossible, for individuals with

meritorious civil rights claims but relatively small potential damages to obtain

redress from the courts," which undermines the purpose of the civil rights statute.

*Id*. at 578.

A challenge based on proportionality has also been rejected by the Seventh

Circuit.  The trial court had reduced the lodestar rate, reasoning that "few paying

clients would be inclined to pay voluntarily an hourly rate of $275 to seek damages

not exceeding $1,000."  *Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995).

The Seventh Circuit reversed that reduction, rejected its rationale, finding instead

that "a high degree of success" was achieved because "Tolentino prevailed on

summary judgment, thereby protecting her rights under the statute, and has

recovered the maximum statutory damages allowed to an individual plaintiff."  *Id*.

at 653. Similar to the circumstances in *Tolentino*, Plaintiff prevailed through the

Rule 68 judgment achieving "a high degree of success" by recovering the

maximum statutory damages thereby protecting her rights under the FDCPA.

**D.**     **The Lodestar Amount is Presumed Reasonable Unless the Defendant carries its Burden of Showing Why the Figure Should be Adjusted Downward**

The Supreme Court has ruled that there is a "strong presumption" that the

lodestar figure represents a reasonable attorney's fee because "'the lodestar figure

includes most, if not all, of the relevant factors constituting a 'reasonable'

attorney's fee.'" See *Pennsylvania v. Delaware Valley Citizens' Council for Clean*

*Air*, 478 U.S. 546, 566 (1986) (citations and quotations omitted). Further, "it is not unreasonable to consider the public benefits of counsel's efforts in determining the level of reasonable compensation." *See*, e.g., *City of Riverside v. Rivera*, ___ U.S. ___, 106 S.Ct. 2686, 2693-96, 91 L.Ed.2d 466 (1986) (plurality opinion); *Environmental Defense Fund Inc. v. Environmental Protection Agency*, 672 F.2d 42, 59 (D.C.Cir.1982)(court awarded upward adjustment of "15-20%, to reflect 'benefits to the public from suit,' and 'the delay in receipt of payment for services rendered.'")(citation omitted). See *Bebchick v. Washington Metropolitan Area Transit Comm'n*, 805 F.2d 396 (D.C.Cir.1986) The party proposing any adjustment to the lodestar bears the burden of justification. *Blum v. Stenson*, 465 U.S. 886, 898, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984); *Bebchick*, 805 F.2d at 403. If the defendant fails to meet its burden of rebutting Plaintiff's evidence of reasonableness the trial court can "rely solely upon plaintiffs' unrebutted evidence." *Covington*, 839 F.Supp. at 900

MRA's broadly based, ill-aimed attack is the sort of not countenanced in this Circuit. See *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1337-38 (D.C.Cir. 1982). The burden of proof is on the opponent to present specific evidence that a lower amount is appropriate. E.g., *United States Football League*, 887 F.2d at 413. MRA failed to carry its burden as its sole argument in opposition to Plaintiff's fee petition is a generic one. MRA's broadly based, ill-

aimed attack claiming that Plaintiff's fee request is "excessive and exaggerated" thus should be denied outright based on the "shock the conscience" theory is unsupported by law. The "shock the conscience" theory is applicable to civil rights claims where the fee-shifting provision is not mandatory as it is in the FDCPA. See *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1130-33 (9th Cir. 2008). The FDCPA provides "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of………the costs of the action, together with a reasonable attorney's fee as determined by the court." *See* 15 U.S.C. § 1692k(3).  The provision makes fees mandatory.

As such, MRA failed to meet its burden and the trial court abused its discretion by raising sua sponte an argument relating to sanctions and time spent on Plaintiff's opposition to MRA's motion as well as raising time spent on state law claims as bases for the drastic reductions made to Plaintiff's lodestar fee when such arguments were never made by MRA.

### i. The Trial Court Abused Its Discretion By Improperly Applying Contempt Sanctions via its Percentage Reductions to Lower the Lodestar Fee.

The trial court cites as authority for its substantial percentage reductions *Laborers' Int'l Union of N. Am. v. Brand Energy Servs. LLC*, 746 F. Supp. 2d 121, 126 (D.D.C. 2010) standing for the proposition that the court can "reduce the

proposed fee by a reasonable amount without an item-by-item accounting." *See* JA

179. However, eighty five and fifty percent reductions are not reasonable amounts

but are drastic. This Circuit is clear about the factors used to determine a

reasonable attorney fee award.  The Court must make three separate

determinations: (1) what constitutes a "reasonable hourly rate" for the services of

plaintiff's counsel; (2) the number of hours that were reasonably expended on the

litigation; and (3) whether plaintiff has offered "specific evidence" demonstrating

this to be the "rare" case in which a lodestar enhancement is appropriate, and if so,

in what amount. *See Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C.

Cir. 1995).  Sanctions are not a permissible factor that can be utilized to reduce the

lodestar amount.

Other factors relevant to changes from the lodestar include the contingent

nature of success, harm resulting from delay in payment, benefit to the public, and

possibly the quality of representation. With regard to the contingent nature of

success, it may be appropriate in some circumstances to compensate counsel for

the risk as seen at the start of the litigation that the suit would be unsuccessful and

that no fees would be forthcoming. See *Sierra Club v. Environmental Protection

Agency*,769 F.2d 796, 809 (D.C.Cir.1985); *Laffey v. Northwest Airlines*, 746 F.2d

4, 26-29 (D.C.Cir.1984), cert. denied, 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d

622 (1985); *Murray v. Weinberger*, 741 F.2d 1423, 1431 (D.C.Cir.1984). Also

important is "[t]he delay in receipt of payment for services rendered [which] is an additional factor that may be incorporated into a contingency adjustment." *Copeland*, 641 F.2d at 893. As this case amply demonstrates, "[c]ourt-awarded fees normally are received long after the legal services are rendered." *Id*. An additional factor that may be considered in adjusting the lodestar is the quality of representation. *Bebchick*, 805 F.2d at 403. It should be noted that contempt sanctions are not a determination or factor that is listed or can be used in adjusting the lodestar amount.

In general, "the party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable." *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir.1990). In order "to meet its burden, the fee petitioner must 'submit evidence supporting the hours worked and rates claimed.'" *Id*. (citing *Hensley v. Eckerhart*,461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The opposing party "must identify the portion of the fee request being challenged and state the grounds for the challenge." *Bell v. United Princeton Properties,* 884 F.2d 713, 715 (3d Cir.1989). The court has wide discretion "in deciding what a reasonable fee award is, *so long as any reduction is based on objections actually raised by the adverse party*." *Id*. at 721. The Third Circuit has noted that "a court may not reduce counsel fees sua sponte as "excessive, redundant, or otherwise unnecessary' in the absence of a sufficiently specific objection to the amount of

fees requested" and the court "may not award less in fees than requested unless the opposing party makes specific objections to the fee request." *U.S. v. Eleven Vehicles*, 200 F.3d 203, 211 (3d Cir.2000).  The Third Circuit further noted that "a court may not reduce counsel fees sua sponte as 'excessive, redundant, or otherwise unnecessary' in the absence of a sufficiently specific objection to the amount of fees requested 'and the court' may not award less in fees than requested unless the opposing party makes specific objections to the fee request."  Sua sponte reductions to fee requests deprive the applicant of the right "to offer evidence in support of the reasonableness of the request." *Bell*, 884 F.2d at 719. (internal quotation marks omitted). Moreover, "because statutory fee litigation is adversarial litigation, there is no need to allow the district court to reduce a fee award on its own initiative." *Id*. Such is even more the case if sanctions are imposed as a method of reduction of the fee request.

A district court's discretion.......should not be upset absent clear misapplication of legal principles, arbitrary fact finding, or unprincipled disregard for the record evidence. *King v. Palmer*, 950 F.2d 771, 786 (D.C.Cir.1991) (en banc), cert. denied, ___ U.S. ___, 112 S.Ct. 1290, 117 L.Ed.2d 514 (1992) & ___ U.S. ___, 112 S.Ct. 3054, 120 L.Ed.2d 920 (1992). However, a district court can abuse its discretion by failing to consider the legally relevant factors. See *Diamond Ventures, LLC v. Barreto*, 452 F.3d 892, 895 (D.C. Cir. 2006)(CONCURRENCE).

Here, the trial court misapplied legal principles and disregarded record evidence relating to MRA's vexatious defense posture in addition to failing to consider legally relevant factors when reducing a lodestar amount and as such abused its discretion.

Here, Plaintiff was neither given fair notice of the potential for sanctions in light of the inherent ambiguity of the February 11th Order nor was Plaintiff given the opportunity of a hearing to present argument as to why she did not violate the February 11th order or to present argument as to why her fees should not be reduced based on the alleged violation. A sanction is considered criminal if it is punitive, to vindicate the authority of the court. The January 6th Order specifically states that the percentage reductions were applied "to plaintiff's fee award based on the volume of unproductive and wasteful activity that violated an explicit order to be respectful in pleadings filed before this Court." *See* JA 178. The January 6th Order lacks any suggestion that the Plaintiff could yet comply thereby purging herself of the contempt and sanctions. In applying the substantial reductions, the court invoked its authority to punish Plaintiff for alleged violations of its February 11th order significantly reducing the amount of attorney fees requested, by tens of thousands of dollars, as is affirmed in the January 6th Order. As such, the District Court's findings are functionally criminal rather than civil in nature. Regardless of whether the sanctions were criminal or civil Plaintiff was entitled to a hearing prior

to such sanctions being imposed.  Plaintiff was never told asked to appear before the trial court for cause or to explain why it should not impose sanctions.

The only party that has been sanctioned and admonished for vexatious and unnecessary litigation in this matter is MRA. Further, though opposing counsel has likely billed over $300,000 in attorney fees for this action, according to the undersigned's calculation using opposing counsel's admitted hourly rates, it appeals the attorney fee judgment as excessive and continues to unreasonably seek to deny Plaintiff any attorney fees at all by with no credible basis for its argument. *See* JA 337.  MRA's dilatory litigation tactics and continued refusal to pay the judgment issued almost two years ago, along with the trial court and magistrate's drastic reduction to Plaintiff's attorney fee, are the inherent risks associated with FDCPA cases that fee-shifting provisions are designed to protect against. If a defendant in a consumer protection action can unreasonably litigate with abandon under the guarantee that the trial court will arbitrarily limit the amount of attorney fees or deny fees outright then competent counsel will not bring such cases and the legislative goals of Congress in authorizing consumers to aid in enforcement of the Act as private attorneys general is lost. By using contempt citations to reduce Plaintiff's fee request the magistrate and the trial court misapplied the law relating to fee-shifting petitions as imposition of sanctions is not a permissible factor in determining whether Plaintiff's lodestar amount is reasonable under a mandatory

fee-shifting provision.  As such, the magistrate and the trial court misperceived and misapplied the law thereby abusing its discretion.

### ii. The Trial Court Abused Its Discretion By Ruling that Plaintiff Violated the February 11th Order Without Fair Notice and a Hearing

A party must be provided with "fair notice of the *particular* acts enjoined" or risk violating "the most fundamental postulates of our legal order forbid[ding] the imposition of a penalty for disobeying a command that defies comprehension." *Int'l Longshoremen's Ass'n v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76 (1967). "Like other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record." *Roadway Express, Inc. v. Piper*, 447 US 752 (1980).  If, as the magistrate concludes, Plaintiff's statements violate the February 11th Order, the order is ambiguous and unclear. As such, Plaintiff was denied fair notice of the particular statements and acts that violate said order.

However, Plaintiff did not violate the February 11th Order.  The trial court ruled:

> MINUTE ORDER granting in part and denying in part 10 Motion for Leave to File a Surreply. The rules do not provide for a surreply and the Court need not exercise its jurisdiction to permit parties to file pleadings that are unnecessarily enlarged with sharp attacks on counsel such as "defendant disingenuously asserts," or "defendant absurdly argues," or "it is hard to believe that defendants would stoop to such a blatant mischaracterization," particularly when the sentence plaintiff complains has been "misrepresented" by the defendants is ungrammatical and imprecise.

Plaintiff may not file the attached proposed surreply, but it will be permitted to file a surreply that addresses the new legal issues only and omits section I, and the surreply, which may not exceed 5 pages, must be concise and trimmed of this sort of verbiage. No reply to the surreply will be required. Signed by Judge Amy Berman Jackson on 2/11/2014. (lcabj1) (Entered: 02/11/2014)

*See* JA 3.  First, the Order applies specifically to the surreply and does not

speak to proceedings in general or Plaintiff's motion for attorney fees where the

alleged offending statements were made.  Second, reasonable minds may at least

differ, as to whether the following statements are "sharp" and "attacks" and

"directed at defense counsel" – it is Plaintiff's contention that such statements are

not.

1. "Defendant is unrepentant"
2. "proverbial shoulder roll represented in the Rubenstein affidavit and Sections A & B of Defendant's Opposition further demonstrates its unmistakable confidence that it is above the law"
3. "Unscrupulous debt collectors do a cost benefit analysis and make the conscious and deliberate decision to take the risk of noncompliance in failing to reform their policies and procedures through proper oversight of their employees against the small chance of being sued by a single consumer" [This statement generally refers to "unscrupulous debt collectors"]
4. "Defendant's conduct appears to be based in a reality that is unclear from the record"

Because the foregoing statements were in Plaintiff's fee motion and not the

surreply to which the February 11th letter was directed and does not in fact order

say that the foregoing statements are violative Plaintiff certainly did not receive

fair notice or a hearing.  As such, the statements are improper bases for an 85 and

50 percent reduction of Plaintiff's request for attorney fees and the trial court abused its discretion.

Further, neither the trial court nor the magistrate held a contempt hearing giving Plaintiff notice that it was considering a contempt citation or to establish that any of the foregoing passages were sharp, were attacks, and were directed at defense counsel or that contempt of the trial court's February 11th order was even being considered as a basis for a reduction of the fee request. As such, Plaintiff was denied due process. The R&R and subsequently the trial court appears to assume the violations as fact and in doing so improperly broadens the scope of the February 11th Order. Further, even if the above statements were considered to violate the February 11th Order, though Plaintiff strongly asserts that they do not, the punishment imposed certainly does not fit the crime. Further, the passages cited by the Magistrate do not provide a proper basis for a reduction of fees as they are not of the nature of those admonished against in the Court's February 11th Order. It is also questionable whether the magistrate has the authority to cite Plaintiff for contempt of the trial court's February 11th Order as a final and irreversible decision as the trial court concluded. *See* JA 178.

Importantly, MRA made the following statements and was not sanctioned or punished in any way:

"Plaintiff's counsel has crossed over the 'border on the absurd.'" *See* JA 105

"..counsel's self professed expertise is a product of her subjective belief or fanciful imagination.."  *See* JA 110.

In an action against the City of Chicago for an alleged assault and excessive force by police officers, the victim failed to meet three separate deadlines within which to file answers to interrogatories. Nevertheless, the appeals court ruled that the trial court abused its discretion by dismissing the victim's claims with prejudice because the city's attorneys were equally disrespectful of the court's orders, but were not sanctioned in any manner. *Rice v. City of Chicago*, 333 F.3d 780 (7th Cir. Ill. 2003).

The magistrate's failure to cite MRA for contempt for its clear and more egregious statements make the magistrate's action against Plaintiff an abuse of discretion and manifestly unjust. As plaintiff was also denied due process which requires fair notice and a hearing the drastic reduction of fees is an abuse of the discretion.

### iii.    A Fee Award Based On Lodestar Is Reasonable Even If Not All Claims Succeed

"[I]t sometimes will be the case that a lawsuit will seek recovery under a variety of legal theories complaining of essentially the same injury. A district judge must take care not to reduce a fee award arbitrarily simply because a plaintiff did not prevail under one or more of these legal theories. No reduction in fee is appropriate where the issue was all part and parcel of one matter, but only when

the claims asserted are truly fractionable." See *Copeland v. Marshall*, 641 F.2d at

892 n.18 (internal quotation marks and citations omitted); see also *Miller v.*

*Holzmann*, 575 F.Supp.2d 2, 33 (D.D.C.2008) (discussing *Copeland* and

concluding that 'even efforts directed to non-prevailing issues may be expended in

pursuit of a successful resolution of the case') (internal quotation marks omitted).

   While the court may appropriately reduce the lodestar for time spent

litigating unsuccessful claims, *Hensley* further cautioned against using "a

mathematical approach comparing the total number of issues in the case with those

actually prevailed upon," which would deter a plaintiff from bringing meritorious

claims. 461 U.S. at 435 n.11.  As *Hensley* explains,

> In [some] cases the plaintiff's claims for relief will involve a common core
> of facts or will be based on related legal theories.  Much of counsel's time
> will be devoted generally to the litigation as a whole, making it difficult to
> divide the hours expended on a claim-by-claim basis.  Such a lawsuit cannot
> be viewed as a series of discrete claims.  Instead [the court] should focus on
> the significance of the overall relief obtained by the plaintiff in relation to
> the hours reasonably expended on the litigation.

*Id*. at 435.  See *First Gov't Mortg. & Investors Corp*., 225 F.3d 738, 746 (D.C. Cir.

2000) (holding time spent on unsuccessful claims is only excluded if it is "distinct

in all respects" from the successful claims.); see also *Rode v. Dellarciprete*, 892

F.2d 1177, 1183 (3d Cir. 1990) (finding the defendant bears the burden to show

that time spent on unsuccessful claims are "distinct in all respects"); *Clarke v.*

*Whitney*, 3 F. Supp. 2d 631, 634 (E.D. Pa. 1998) (same).

Plaintiff specifically excluded work done on the state law claims from her fee petition yet the magistrate cites, and the trial court echoes, as one of her bases for the drastic percentage reduction is Plaintiff's work on the state law claims.  *See* [JA 75].  Further, this argument was improperly raised sua sponte by the magistrate. The trial court based its decision on an erroneous conclusion of fact and relied on an argument not raised by the MRA and therefore abused its discretion by applying the drastic percentage reductions.

### G.    The Trial Court Abused Its Discretion By Penalizing Plaintiff When Defendant's Scorched Earth Litigation Tactics to the Point of Being Sanctioned By the Trial Court—Not Unnecessary Litigation By Plaintiffs—Drove Up Fees

As this Court has admonished, a defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by plaintiff in response." See, *Copeland*, 641 F2d at 904(en banc), citing *Wolf v Frank*, 555 F2d 1213, 1217 (5th Cir 1977)("Obviously, the more stubborn the opposition the more time would be required" by the other side). "It is intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases[,] and not be reduced because the rights involved may be nonpecuniary in nature." *Blum v. Stenson*.  Courts have enhanced fee awards based on a defendant's obduracy.  For example, in *Edgerton v. State Personnel Bd*. (2000) 83 Cal.App.4th 1350, 1363 the

trial court applied a multiplier to enhance the prevailing plaintiffs' lodestar fee determination under Code of Civil Procedure section 1021.5 because the defendant passed on a chance to settle the litigation early on in exchange for nothing more than an agreement to change the drug testing policy that led to the litigation, conduct the trial court characterized as "intransigent opposition." The appellate court affirmed that reasoning. (Edgerton, supra, at p. 1363). Further, in *Crommie v. P.U.C.* (N.D. Cal. 1994) 840 F.Supp. 719, 726, the court considered a fee award to successful plaintiffs under both federal and California age discrimination statutes, and enhanced their attorney fee award because their counsel obtained an exceptional result in the face of "defense counsel's excessively vexatious and often unreasonable opposition" during trial. (*Crommie*, supra, at p. 726.)

As discussed *supra*, Plaintiff made multiple settlement offers to MRA prior to even filing a complaint with the last one being $7,500 to which MRA responded with a final settlement offer of $2,000 and a statement that it intended to file a Rule 68 as soon as the complaint was filed. *See* JA 423. Therefore, though MRA knew that it would attempt settlement immediately, instead of accepting the $7,500 offer to settle the entire matter MRA forced Plaintiff to research and file a complaint only to immediately issue a Rule 68 offer on the FDCPA claims and leaving all the state law claims to litigate. MRA's intransigent defense tactics have been in play since Plaintiff sent her first settlement offer. This entire matter could have been

settled back in 2013 for $7500.  However, MRA's conscious decision to engage in its Stalingrad defense only to complain about the amount of hours expended in response is not credible. Further, MRA continues to employ the same strategy in other cases in this Circuit thus cannot be heard to complain about the consequence of the vexatious and unreasonable litigation tactics it employs.

Included in MRA's vexatious tactics is its continued filing of improper, out-of-time documents.  One egregious example is MRA's filing of an untimely combined "Response to Plaintiff's Objections…Reply to Plaintiff's Response to Defendant's Objection" filed in connection with the Magistrate's Report and Recommendation.  MRA filed the document out-of-time and proceeded to make brand new and untimely arguments never made in its opposition to Plaintiff's Motion for Attorney Fees filed eight months earlier. *See* JA 126 – 142 and ECF No. 17.  Further, the Federal Rules do not allow for the parties to reply to a response to objections to a magistrate's report and recommendation.  MRA made the filing after the trial court denied its request for a hearing on the motion for attorney fees and without obtaining leave from the trial court to make the filing. *See* JA 8 & November 8, 2014 Minute Order.  This is just another example of MRA's scorched earth litigation strategy where it simply makes filings on impulse without regard to the rules forcing Plaintiff to respond and then complains about the amount of fees incurred as a result of its litigation strategy. "Elemental notions

of fairness dictate that one who causes a loss should bear the loss." See

*Owen v. City of Independence*, 445 U. S. 622, 654 (1980).

It is also important to note to the Court that the issue raised by MRA as its basis for a complete denial of attorney's fees one of first impression for this Court and for the trial court. As such, Plaintiff was required to defend her motion from scratch without the substantial benefit of a body of FDCPA law from this Circuit as guidance. Moreover, the novelty and complexity of the issues are fully reflected in the number of billable hours recorded by the undersigned.

Contrary to MRA's assertions, it is illogical and against the self-interest of the few attorneys who are willing to represent plaintiffs—without a guarantee of payment—to engage in unnecessary legal work in fee-shifting cases in the hopes that it may result in a higher fee. The undersigned does not receive a salary or retainer, as opposing counsel does. Before being paid for services, Plaintiff must win the lawsuit and all appeals. As a result the undersigned must advance significant costs. Therefore, performing unnecessary legal work puts such attorney at considerably higher financial risk, because they could instead be working on cases for which they are paid a salary or retainer. Therefore, Plaintiff was forced to respond to MRA's vexatious litigation strategy and did not cause such strategy. Therefore, Plaintiff should not be arbitrarily punished as a result of her response.

In *Rodriguez-Hernandez v. Miranda-Velez*, 132 F.3d 848, 860 (1st Cir. 1998) the First Circuit remanded the case back to the trial court ruling that an unexplained reduction of fees for lack of success in the face of an extreme defense independently requires remand. The circuit further explained that because a litigant's staffing needs and preparation time will often "vary in direct proportion to the ferocity of her adversaries' handling of the case, this factor weighs heavily in the balance." *Id*.

"Litigation has something of the tennis game, something of war, to it; if one side hits the ball, or shoots heavy artillery, the other side necessarily spends time hitting the ball or shooting heavy artillery back." *Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1287 (9th Cir.2004). When a defendant employs a scorched earth strategy, unreasonably increasing a plaintiff's litigation expenses, the defendant can expect to pay for the attorney fees it forces the plaintiff to incur.

Such "Stalingrad defense" tactics, *Lipsett v. Blanco*, 975 F.2d 934, 941 (1st Cir. 1992), must have some cost associated with them, if the defense ultimately fails. By being able to increase Plaintiff's time expenditures by almost seventy-five percent of the total requested time, MRA circumvent the congressional intent that prevailing parties be awarded reasonable fees. Whatever determination the Court makes as to the reasonableness will be diluted by almost seventy five percent. This is not what Congress intended in enacting the private attorney general statutes, and

this award surely does not advance public policy, even though "the public as a whole has an interest in the vindication of the statutory rights." *Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995).

### H.    Plaintiff's Fee Request are Reasonable for this Circuit and Others and Defendant has No Credible Support for Its Argument that Plaintiff's Request for Fees is Excessive and Should Be Denied Outright

Defendant's "broad-based ill aimed attack" of "shock the conscience" is exactly the type of argument this Court has previously found lacking. This Court ruled in *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.,* 675 F.2d 1319, 1337-38 (D.C.Cir. 1982) concerning an attorney fee petition that "neither broadly based, ill-aimed attacks, nor nit-picking claims by the Government should be countenanced." The burden of proof is on the opponent to present specific evidence that a lower amount is appropriate. E.g., *United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir. 1989); *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992) (fee opponent must submit evidence); *Brinker v. Giuffrida*, 798 F.2d 661, 668 (3d Cir. 1986) ("[T]here is ordinarily no reason for a court to disregard uncontested affidavits of a fee applicant").

The following cases demonstrate further why the "shock the conscience" standard being promoted by Defendants is inapplicable to the case at bar.  Fee awards in civil rights and consumer protection matters regularly exceed the

plaintiff's recovery. E.g., *United States Football League v. National Football League,* 887 F.2d 408, 413-15 (2d Cir. 1989) ($5.5 million fee award on $3.00 recovery).

In *Norden v. Clough*, 674 F.Supp.2d 126 (D.C. Cir. 2009), also a contingency case, this Court awarded Plaintiff $320,000 in attorney fees after Plaintiff accepted a Rule 68 Offer of Judgment. *Blackman, et al., v. District of Columbia*, *et al.* 677 F.Supp.2d 169 (2010) (4400 hours for the 29 months of work deemed not excessive); *American Lands Alliance et al v. Norton,* 525 F.Supp.2d 135 (2007) (plaintiffs awarded $107,722.63 for their attorneys' fees and costs after settlement); *Judicial Watch v. U.S. Dept. of Commerce*, 470 F.3d 363 (D.C. Cir. 2006)($897,331 attorney fee award FOIA); *American Civil Liberties v. U.S. Dept. of Homeland Sec.*, 810 F.Supp.2d 267 (D.D.C. 2011)($215,381.59 fee award); *Action on Smoking and Health v. C.A.B.*, 724 F.2d 211, 220 (D.C.Cir.1984))(568 hours spent drafting an interim fee petition is compensable and thus reasonably expended)

In *Grant v. Martinez,* 973 F.2d 96 (2d Cir. 1992), the plaintiffs settled for $60,000 and did not get all the relief they requested. The lodestar figure of $500,000 for the attorneys was upheld. *Lee v. Javitch, Block & Rathbone, LLP*, 568 F.Supp.2d 870 (2008) ($125,315.30 in attorney fees and costs in the amount of $2,206.18 for an FDCPA case) *Garcia v. Resurgent Capital Services, L.P. et al*,

No. C-11-1253 EMC. (United States District Court, N.D. California. August 30, 2012.) ($213,606.65 that included $187,292.25  in attorney fees for an FDCPA case); *City of Riverside v. Rivera*, 477 U.S. 561, 580, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (awarding $245,450 fees on a $33,350 recovery, including 143 hours for trial preparation); *Heritage Pacific Financial, LLC. v. Monroy*, 215 Cal.App.4th 972 (2013) 156 Cal. Rptr. 3d 26 (March 29, 2013). ($450 an hour for 194.5 hours for the lodestar amount of $87,525) *Camacho v. Bridgeport Fin., Inc*. 2007 WL 1302731 (N.D. Cal. May 2, 2007), *rev'd on other grounds*, 523 F.3d 973 (9th Cir. 2008) (awarding fees for 349 hours); *Grant v. Bethlehem Steel Corp.,* 973 F.2d 96, 101-02 (2d Cir.1992)(approving fee award of $512,590.02 in employment discrimination class action settled for damages totaling $60,000); *Dunaway v. JBC & Assocs. Inc.*, 2005 WL 3465665 (E.D. Mich. Dec. 19, 2005( 262 hours in winning summary judgment and settling before trial on damages); *Caputo v. Professional Recovery Servs., Inc*., 2004 WL 1503953 (D. Kan. June 9, 2004) (87,000 in fees awarded to Plaintiff on an offer of judgment of $15,000); *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1057-60 (2d Cir. 1989) ($415,000 fee for recovering $2,689.02 monthly pension). *See Norton v. Wilshire Credit Corp.*, 36 F. Supp. 2d 216, 220 (D.N.J. 1999) (rejecting proportionality in awarding almost $58,000 in fees in an FDCPA case); *Henggeler v. Brumbaugh & Quandahl, P.C. et al*, Civ. No. 8:11CV334 (EMC) (D. Nebraska,

February 26, 2014) (FDCPA case attorney fees in the amount of $118,496.25 and costs in the amount of $6,666.19)

As Plaintiff has cited numerous cases from this Circuit where substantially more fees were awarded and more hours deemed reasonably expended, Plaintiffs fee request is not excessive and MRA's argument for complete denial of fees based on "excessiveness and exaggeration" is frivolous on its face. This is especially so in light of MRA's scorched earth defense posture and its outright rejection of multiple reasonable settlement offers including one for this fee petition prior to its filing. Further, it is worth noting that many of the cases cited above from other jurisdictions the community rate for lawyers is much lower than that of the District of Columbia thus representing an even greater disparity in fees than appears at first glance.

## II.    DC CONSUMER PROTECTION AND PROCEDURES ACT

### A.    The DC Consumer Protection and Procedures Act Applies to Debt Collectors

Recently this Court addressed the decision by this trial court relating to MRA's argument that the loan of money is not a good or service as defined in the CPPA.  This decision was relied on by the trial court in *Jones v. Dufek* as a basis to dismiss the CPPA claims in that case.  However, this Court in its recent decision in *Jones v. Dufek* explained

> The district court concluded that the D.C. Act did not apply because "a loan of money is not a purchase or lease of goods or services." *Jones*, 77 F. Supp. 3d at 139 (italics omitted). The court's interpretation may be incorrect; the D.C. Act states specifically that "goods and services . . . includes consumer credit . . .." D.C. CODE § 28-3901(a)(7).

*See Jones v. Dufek*, No. 15-7013, p.9 (D.C. Cir. July 26, 2016). Further, opposing

counsel is currently litigating a case against the enforcement arm of the CPPA, the

District of Columbia Office of the Attorney General, where it made the same

argument which was rejected by the Superior Court of the District of Columbia.

See *District of Columbia v. Fair Collections and Outsourcing, Inc*., Case No.

2015 CA 008479 B. *See* Addendum. Section 28-3909(a) explicitly states that the

District, through its Attorney General, may "recover restitution for property lost or

damages suffered by consumers as a consequence of the unlawful act or practice."[4]

The statutory language and the Court of Appeals' en banc decision in *Grayson v.

AT&T Corp.,* 15 A.3d 219, 244-45 (D.C. 2011) discusses the effect of the 2000

amendments to the CPPA, and provides that "it is absolutely clear that the Council

intended to give the . . District's OAG a larger role in consumer protection in order

to replace DCRA. Thus, the Council amended D.C. Code § 28-3909(a) to give

OAG authority to 'recover restitution for property lost or damages suffered by

---

[4] Section 28-3909(a) refers to the "Corporation Counsel" not the "Attorney General." The Office of the Corporation Counsel was renamed the Office of the Attorney General in 2004, after the enactment of Section 28-3909(a). See 51 D.C. Reg. 6052 (2004).

consumers as a consequence of the unlawful act or practice." The OAG regularly sues debt collectors for abusive debt collection activities under the CPPA.

The CPPA is a remedial statute enacted to "assure that a just mechanism exists to remedy *all* improper trade practices and deter the continuing use of such practices [and to] promote, through effective enforcement, fair business practices throughout the community. D.C. Code §28-3901(b)(1) and (b)(2).  As a remedial statute, the Act is to be construed and applied liberally to promote its broad purpose of remedying all improper trade practices in the District of Columbia. D.C. Code §28-3901(c).

### i.     *Statutory Interpretation*

The D.C. Court of Appeals has repeatedly concluded that the CPPA "was designed to police trade practices arising only out of consumer-merchant relationships." *Snowder v. District of Columbia*, 949 A.2d 590, 599 (D.C.2008).  A statute should not be interpreted to negate its own stated purpose.  *New York State Dept. of Social Servs. v. Dublino*, 413 U. S. 405, 419–420 (1973).  As the Act is a remedial statute it should be interpreted broadly to effect its purpose.

### B.     Debt Collection is a Trade Practice under the CPPA

The Supreme Court has confirmed that "violations of the FDCPA [federal statute regulating debt collection] are deemed to be unfair or deceptive acts or practices under the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 41 *et*

*seq*., and are enforced by the Federal Trade Commission (FTC)." See §

1692*l*, *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, et al*, 130 S.Ct.

1605, 1609 (2010).

> ### i.    *Debt Collection is a Trade Practice within the Plain Language of the Act*.

In dismissing Plaintiffs CPPA claim the District Court ruled that

"[m]oney….is neither a good or service…..and a loan of money is *not* a purchase

or lease of goods or services" and debt collection is not a trade practice.  This

Court recently ruled that the "sale of credit" is a good or service under the CPPA.

*Jones*, No. 15-7013 at p.9.  Debt collection is a trade practice within the plain

language of the Act.  The trial court misapprehended the full definition of a "trade

practice" and "consumer goods and services" thereby basing its exemption of the

debt collection industry on a significantly narrower definition of trade practice than

is contemplated by the CPPA's broad proscription. The Supreme Court has ruled in

interpreting the FDCPA that the "Court may not, however, read more into [a

provision] than the statutory language naturally supports." *Jerman*, 130 S.Ct. at

1624.  Here, the lower court read an exemption for the debt collection industry into

the CPPA when no such exemption is expressly given nor contemplated by the

legislative history or the CPPA's purpose.

When the Federal Trade Commission attempted to read an exemption into

the FDCPA for lawyers who regularly, through litigation, try to collect consumer

debts the argument was rejected by the Supreme Court whereby the Court

explained:

> [W]e find nothing either in the Act or elsewhere indicating that Congress intended to authorize the FTC to create this exception from the Act's coverage— an exception that, for the reasons we have set forth above, falls outside the range of reasonable interpretations of the Act's express language. *Heintz v. Jenkins,* 514 U.S. 291, 298, 115 S.Ct. 1489, 131 L.ED.2d 395 (1995).

 "In answering questions involving the proper interpretation of D.C. statutes,

this [Circuit] relies on the construction of these laws by the D.C. Court of

Appeals." *Poole v. Kelly*, 954 F.2d 760, 761 (D.C.Cir. 1992). In determining

whether the language of a statute is plain and unambiguous the Court  "start[s]

with the plain meaning of the text, looking to the language itself, the specific

context in which that language is used, and the broader context of the statute as a

whole." *Blackman v. District of Columbia*, 456 F.3d 167, 176 (D.C.Cir. 2006).

"The plain meaning that [courts] seek to discern is the plain meaning of the whole

statute, not of isolated sentences." *Beecham* v. *United States*, 511 U.S. 368, 372

(1994).

A "trade practice," is defined as "any act which does or would create, *alter*,

repair, furnish, make available, *provide information about*, or, *directly or*

*indirectly*, solicit or offer for or *effectuate*, *a sale*, lease or *transfer*, *of consumer*

*goods or services*." Section 28-3901(a)(6) (*emphasis added*). *DeBerry v. First*

*Government Mortg and Investors Corp,* 743 A.2d 699, 700 (D.C. 1999); D.C.Code

§ 28-3901(a)(7) defines "goods and services" broadly to mean: any and all parts of the economic output of society, *at any stage or related or necessary point in the economic process*, and *includes consumer credit*, franchises, business opportunities, real estate transactions, and *consumer services of all types*. *Id* at 700-701 (*emphases added*).  In light of all the above and the mandate to construe the CPPA broadly to effect its purpose, "'any act ... of providing information about' or 'offering for ... sale' consumer credit would seem to be a 'trade practice,' as is 'any act ... effectuating' a real estate transaction and any '*sale*' of consumer services '*of any type*'" *Deberry*, 743 A.2d at 701.

When liberally construing and applying the CPPA to effect its purpose of remedying *all* improper trade practices in the District, debt collection is a trade practice within the plain text of the act in multiple and independent ways.  First, MRA identifies itself as a debt collector in it collection letters. Second, because debt collection is an act which does or would…directly or indirectly…effectuate,  a transfer of consumer goods or services it is a 'trade practice" within the meaning of § 28-3901(a)(6). As a purchaser of alleged charged-off consumer debt, Defendant then attempts, at the collection stage of the alleged debt, to collect on the "debt" or to, directly or indirectly, effectuate the transfer of the alleged consumer debt from the "Original Creditor" to the Defendant and as such engaged in a trade practice within the meaning of the Act.  Third, debt collection is a practice which does or

would ….alter…a transfer of consumer goods or services in that it involves collecting amounts claimed to be due on the purported debt and does or would alter the amount of the alleged debt transferred or the amount alleged to be owed.

MRA's act of seeking to collect on the alleged debt (alleged loans) and any payments made by Plaintiff would *alter* a sale or *transfer* of the goods and services by decreasing the amount allegedly owed by Plaintiff through deduction of each payment amount from the total transferred. Importantly, there is nothing in the CPPA or its legislative history indicating that Congress or the Council intended to exclude debt collection from the broad reach and scope of the DCCPPA. As such, the District Court's interpretation fall outside the range of reasonable interpretations of the CPPA's express language and frustrates its stated purpose to "remedy *all* improper trade practices." The trial court's restrictive reading of the plain language of the DCCPPA is not in keeping with the legislative intent envisioning a broad and expansive reach of the act and as such the ruling should be reversed.

### ii. Other provisions of the Act using equivalent language confirm that Debt Collection is a Trade Practice

The trial court ignored the express reference to §28-3814 in the CPPA which *polices* only *deceptive trade practices*. *See* D.C. Code § 28-3909. The trial court further ignores the context in which the debt collection law is referenced. "In reading a statute we must not look merely to a particular clause, but consider in

connection with it the whole statute" (internal quotation marks omitted)).

See *Dada v. Mukasey*, 554 U.S. 1, ___, 128 S.Ct. 2307, 2317, 171 L.Ed.2d 178

(2008).  The DCDCL, §28-3814, is expressly referenced in §28-3909 as a

"prohibited act" and an "unlawful act or practice." Therefore, it follows that

because Section 28-3909 of the Act *policing improper trade practices* specifically

authorizes the District to bring lawsuits for violations of the debt collection law by

citing the DCCPPA as its authority to do so.

   Also, debt collection is a trade practice because the DCRA enforces

unscrupulous debt collection practices under the CPPA through the office of the

Attorney General.  The CPPA cannot provide authority for the DCRA to bring a

lawsuit for conduct that is not a "trade practice" as the DCRA is without

jurisdiction.  See *Committee Report* at p.20.   Further, violations of other "law[s] of

the District of Columbia" violate the CPPA.  See § 28-3905(k)(1); *Osbourne v.*

*Capital City Mortg. Corp.*, 727 A.2d 322, 325-26 (D.C.1999). Thus, as attorney

debt collectors are not exempt from the FDCPA, if Defendant is liable under the

FDCPA it has violated a law of the District and is therefore liable under the

DCCPPA.  See D.C. Code § 28-3905(k)(1); *Heintz*, 514 U.S. at 299.

   Under Plaintiffs interpretation of the CPPA, the act functions as a

"symmetrical and coherent regulatory scheme," *FDA v. Brown & Williamson*

*Tobacco Corp*., 529 U.S. 120, 133 (2000) (citation omitted), with no need to

rewrite, explain away, or ignore any of its provisions.  Under the suggested

interpretation of the Defendants it does not.

>   ### iii.     Section 1-350.10 of the D.C. Code confirms that Debt Collection is a Trade Practice subject to the Act.

This Circuit has said that evidence of other statutes is appropriate in

determining the meaning of a provision. See, e.g., *Kennecott Utah Copper Corp. v.*

*U.S. Dept. of Interior*, 88 F.3d 1191, 1231 (D.C. Cir. 1996). Therefore, how the

District interprets the Act is relevant to the interpretation by this Court.  D.C. Code

§ 1-350-10 confirms that the District considers debt collection subject to the

DCCPPA as a law that "govern[s] the collection of delinquent debt."

>   The Central Collection Unit and any outside parties it engages to collect delinquent debt shall fully comply with the Fair Debt Collection Practices Act, approved September 20, 1977 (91 Stat. 874; 15 U.S.C. § 1692 et seq.), <u>Chapter 39 of Title 28 [§ 28-3901 et seq.]</u>, <u>and all other federal and District laws and rules that govern collection of delinquent debt.</u> (*emphasis added*)

Thus, according to the District, a debt collector must comply with both the debt

collection law and the CPPA or be subject to liability under both separately and

independently which is why both statutes along with the Fair Debt Collection

Practices Act are listed in § 1-350-10.  As such, Section 1-350-10 confirms that

debt collection and debt collectors are subject to the DCCPPA.

III.   **THE TRIAL COURT DECIDED MATERIAL ISSUES OF FACT AND IMPROPERLY GRANTED SUMMARY JUDGMENT ON PLAINTIFFS DISTRICT OF COLUMBIA DEBT COLLECTION LAW CLAIMS**

A.   **The Trial Court Erred in Denying Plaintiff's Motion for Summary Judgment as to Willfulness**

Plaintiff met her burden by providing evidence that MRA knowingly and willfully maintained policies, practices, and procedures that were inadequate to meet its obligations under the DCDCL. The trial court erred in denying Plaintiff's motion for partial summary judgment. A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is appropriate only if "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Washington Post Co. v. U.S. Dep't of Health & Human Servs.*, 865 F.2d 320, 325 (D.C.Cir.1989)

MRA presented as evidence of its lack of willfulness, a dubious "declaration" signed by Mitchell Rubenstein where Mr. Rubenstein baldly states, without citing to any factual support in the record, the following legal conclusions: "*the law Firm* did not knowingly fail to include accrued interest on the amount listed of $26,471.07 on the February 21, 2013 letter," "*the Law Firm* did not

knowingly fail to include accrued interest on the amount listed of $26,471.07 on

the February 21, 2013 letter" and "I *do not* knowingly fail to include accrued

interest on the August 22, 2013 letter or otherwise misstate the amount due on the

letter. If I had any reason to suspect that the "amount referred" upon which a letter

was based was not accurate, I would have asked Sunrise or Arrowood for an

explanation and/or further information." [*See* ECF No. 84-4, MR AFFDVT, pgs. 3-

5, ¶¶ 11, 13, 14, 25]. As to communicating with Plaintiff by sending a letter to her

home with full knowledge that she was represented by counsel Mr. Rubenstein

says the following in his "declaration."

> Despite the fact that Ms. Dennis' name was listed on the file for the second
> group of loans, the address listed on the August 23, 2013 letter mistakenly
> was to Plaintiff's home address. I reviewed the circumstances under which
> Plaintiff's home address appeared on this letter and, based on my review of
> the Law Firm's records, it appears that the mistake in listing the Plaintifrs
> home address was caused by a computer error that failed to update the
> address on the letter to reflect Ms. Dennis' mailing address.

See [JA 507-508]. Mr. Rubenstein makes such statement after vigorously

arguing in its motion to dismiss that it intentionally sent the letter to the Plaintiff

because it was regarding a different set of loans. After, the trial court issued its

opinion on the motion to dismiss Defendant completely switched it argument and

claimed in its motion for summary judgment that it was a computer error. The trial

court erred in accepting Mr. Rubenstein's affidavit as conclusive proof that MRA

did not recklessly fail to maintain standards, practices and procedures that prent MRA from violating the DCDCL.

Additionally, and also contrary to Mitchell Rubenstein's declaration in which he states he has no reason to suspect that the "amount referred" was inaccurate, MRA did have reason to question the amount and in fact, according to its collection notes, approached Sunrise whereby Sunrise suggested, without any legal authority, an interest rate of "4%." MRA's employee then countered with "3.75%,"also without legal basis, MRA took it upon itself to offer its alleged client the interest rate of "3.75%" even though the documents produced by the MRA indicate an interest rate of "3.62%," "3.5%" and "3.5%" for the alleged loan numbers 23, 24 and 25 respectively that were under discussion during the exchange. Simply conducting a cursory review of the loan file would have revealed that the amounts and interest rates claimed were incorrect. Therefore, MRA had many reasons to question the numbers given by its alleged client as is further demonstrated by MRA rejecting the arbitrary 4% interest rate suggested by its client and instead going with its own arbitrary suggestion of 3.75%. If a client suggests that MRA apply an interest rate that does not appear anywhere in the alleged loan documents that is a reason to question the client's numbers in the "amount forwarded" and questioning does not mean countering with your own random rate that also has no support in the alleged loan documents.

Moreover, in "Sunrise's referral form," the "principal assigned" for the first alleged group of loans relating to the February 21st letter $31,248.01. [ECF No. 84-47, MR Decl, at p.7]. However, MRA's response to Interrogatory #7(a) states the principal amount as $24,069.00 (total claimed principal of alleged loans 20, 21, 22). The March 26th letter states a payoff as of July 2011 as $31,268. Therefore, even if the MRA relied on "Sunrise's referral form," which it did not, its managing member still got it wrong as MRA claimed $20 more than is stated in its alleged client's documents. MRA has likely sent thousands of letters to unrepresented consumers without bothering to determine whether the debt is valid or that its clients are in compliance with the DCDCL. It is the MRA who is the attorney and it is reckless to rely on documents at face value produced by a client without doing any investigation when the debt collection industry is so highly regulated. MRA exhibits a conscious indifference at to its obligation under the DCDCL.

The trial court erred in ruling that MRA met its burden as a matter of law. There are material questions of fact that remain at issue and the trial court improperly decided questions of fact instead of merely determining the existence of a material fact.

## B.     The Trial Erred in Granting Summary Judgment to MRA as to Willfulness

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations ... with

facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C.Cir.1999).  To be

admissible at the summary judgment stage, documents must be authenticated by

and attached to an affidavit that meets the requirements of Rule 56(e). Courts do

"not accept bare conclusory allegations as fact." *Taylor v. F.D.I.C.*, 132 F.3d 753,

763 (D.C.Cir.1997); see also *District Intown Props. Ltd. P'ship v. District of

Columbia*, 198 F.3d 874, 878 (D.C.Cir.1999) ("[T]he court must assume the truth

of all statements proffered by the non-movant except for conclusory statements

lacking any factual basis in the record.). "A mere denial of the facts alleged in a

properly supported motion for summary judgment is not enough to meet the non-

moving party's burden." See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248,

106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Conclusory allegations made in affidavits

opposing a motion for summary judgment are insufficient to create a genuine issue

of material fact." *Sage v. Broadcasting Publications, Inc.*, 997 F.Supp. 49, 53

(D.D.C. 1998). "At the summary judgment stage the judge's function is not

himself to weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial.") *Adickes v. S. H. Kress &

Co.*, 398 U. S. 144 (1970)

    The sole evidence offered by MRA to support its conclusory denial that it

did not willfully violate the District of Columbia Debt Collection law is a

conclusory affidavit written by the partner of the firm Mitchell Rubenstein asserting:

> I do [sic] not knowingly fail to include accrued interest on the August 22, 2013 letter or otherwise misstate the amount due on the letter. If I had any reason to suspect that the "amount referred" upon which a letter was based was not accurate, I would have asked Sunrise or Arrowood for an explanation and/or further information. [JA 507]

Though Plaintiff presented substantial evidence in her Motion for Partial Summary Judgment and her Opposition proving MRA's reckless business practices, the trial improperly credited the above affidavit as prima facie evidence that MRA did not knowingly or recklessly violate the DCDCL. MRA admitted in open court that it had no practices procedures in place to prevent violations of the DCDCL. Plaintiff also presented record evidence that MRA operated under a name that is not its true name in violation of the DCDCL. MRA failed to offer any "evidence," as oppose to unauthenticated documents and self-serving conclusory affidavits, that met its burden that it did not willfully violate the DCDCL as a matter of law.

Further, MRA and Mr. Rubenstein had reason to suspect that the interest rates were inaccurate because its employees were floating what interest rate to apply to the loan in question to the extent of manufacturing an interest rate out of thin air. [JA 489 -490]

The trial court also suggests that Plaintiff raised new arguments in her combination Reply and Response to MRA's motion for summary judgment and its

untimely filing of its "Statement of Undisputed Facts." *See* [JA 245, 252].

However, in the Court's September 21, 2015 Minute Order it permitted Plaintiff to

file a "Response" to MRA's untimely "Statement of Undisputed Facts."[5]  In

MRA's "Statement of Undisputed Facts" it asserted that MRA has procedures in

place which Plaintiff responded to in her court – ordered response.

MRA offered no credible evidence proving as a matter of law that it did not

recklessly violate the DCDCL and the trial court erred in concluding that MRA did

so.


## IV.  NO ATTORNEY-CLIENT PRIVILEGE EXIST BETWEEN A DEBT COLLECTION AGENCY AND THE DEBT COLLECTION LAW FIRM IT HIRES ON BEHALF OF A THIRD-PARTY CLIENT

The trial court erred by misapprehending and misapplying the law relating to

attorney-client privilege and agency in ruling that the documents and information

contained in MRA's privilege log are protected by attorney-client privilege and

work product.

### A.    Sunrise Cannot be an Agent of Arrowood for Purposes of Attorney-Client Privilege

---

[5] MINUTE ORDER granting Motion for Extension of Time to File Response/Reply. Plaintiff shall have until September 28, 2015, to file her reply to defendant's opposition to her motion for partial summary judgment and her response to defendant's statement of undisputed material facts. Signed by Judge Amy Berman Jackson on 9/21/2015. (lcabj2) (Entered: 09/21/2015). See JA 17, Min. Order (Sept. 21, 2015).

The burden of "presenting sufficient facts to establish the privilege" rests with the party claiming it. *Zelaya v. UNICCO Service Company*, 682 F.Supp.2d 28, 38 (D.D.C. 2010)(citations omitted). To accomplish this, the claimant must present "affidavits or other competent evidence" that "support[s] each of the essential elements necessary to sustain a claim of privilege." *Alexander v. FBI*, 192 F.R.D. 42, 45 (D.D.C.2000) (Lamberth, J.) (citations omitted). The burden of proving an agency relationship rests with the party asserting the relationship. *H. G. Smithy Co. v. Washington Medical Center, Inc.*, D.C.App., 374A.2d 891, 893 (1977)

The Court of Appeals in *J.H. Marshall & Associates, Inc. v. Burleson*, 313 A.2d 587, 595 (D.C. 1973) specifically provides that this type of relationship is not an acceptable form of business practice.  Further, Court Rule 49 also specifically prohibits such conduct where the uncontradicted record indicates that Sunrise engaged in the unauthorized practice of law.  Defendant has failed to present any *evidence* rebutting the argument.  Further, the majority in *E.I. du Pont de Nemours & Co., v. Forma-Pack, Inc.*, 718 A.2d 1129 (D. Md. 1998) came to a similar conclusion.  To be protected by the attorney-client privilege, communications between a lawyer and a client must concern legal advice; business advice or similar assistance is not privileged. "Generally, an attorney who serves as a business agent to a client may not assert the attorney-client privilege, because no

confidential relationship attaches."(citations omitted) *Crane v. Crane*, 614 A.2d 935 (D.C. 1992)(concurring opinion). Sunrise is not an attorney or an agent of the Defendant.

The documents are not privilege because 1) MRA was acting in its capacity as a debt collector and not as an attorney and therefore the information is not subject to attorney - client privilege; 2) MRA did not established with record evidence that it had an attorney-client relationship with Arrowood as oppose to a mere debt collector – corporate client relationship during the relevant period; 3) MRA failed to provide, despite a request by the trial court, any evidence proving that its self-serving and conclusory declarations as to the relationship between MRA and Arrowood and MRA and Sunrise are as MRA declares them to be as the only documents cited by the Defendant along with its characterizations of such documents are hearsay and inadmissible as evidence.

The Defendant failed to provide any evidence supporting its declaration that Sunrise is a "forwarder," let alone prove that Sunrise is a forwarder within the meaning suggested by *Badeen v. PAR, Inc.*, 853 N.W.2d 303 (Mich. 2014). Instead Defendant presented a summary declaration in argument without supporting affidavits or evidence.  Sunrise is not and was not a "forwarder" within the meaning of *Badeen* and it absolutely engaged in debt collection against

Plaintiff directly during the relevant period.  Further, there is no law holding that a

"forwarder" does not break attorney-client privilege.

### B.     Arrowood Knowingly Waived Any Attorney-Client Privilege If Such Privilege Ever Attached

Attorney-client privilege will apply where:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Cobell v. Norton*, 226 F.R.D. 67, 87 (D.D.C.2005); *In re Sealed Case*, 737 F.2d 94,

99 (D.C.Cir.1984) (privilege applies only upon showing advice given in legal

capacity).  From the entry itself the opposing party [and ultimately the judge]

should be able to tell that the information not being disclosed is properly claimed

as privileged, since it was a communication from a client, intended to be

confidential, that sought legal advice. *Chevron Corp. v. The Weinberg Group*,

Misc. Action No. 11-409 (Sept. 26, 2012) citing *Ventro v. IRS*, 714 F. Supp. 3d

137, 151 (D.D.C. 2010).  It is well established that "the party claiming the

privilege bears the burden of proving that the communications are protected." *In re*

*Lindsey*, 148 F.3d 1100, 1106 (D.C.Cir.1998).

MRA failed to meet its burden of showing that attorney-client privilege protects the documents in its privilege log. Further, Arrowood voluntarily disclosed the communications at issue to an unrelated non-attorney debt collection agency by allegedly communicating with Defendant through Sunrise or in the presence of Sunrise thereby relinquishing any potential and known right to attorney-client privilege. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).

Attorney-client privilege as recognized in *Upjohn Co. v. U.S.*, 449 U.S. 383 (1981), is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. Extending attorney-client privilege protection to a corporation and its debt collector unduly expands attorney client privilege. Expanding privilege protection to third party unrelated non-legal entities allegedly and illegally hired to sue on behalf of a client does not encourage full and frank communication *between attorneys and their clients*. The District of Columbia Court of Appeals has ruled that such a relationship is illegal and considered the unauthorized practice of law. See *J.H. Marshall & Associates, Inc. v. Burleson*, 313 A.2d 587, 595 (D.C. 1973)(A debt collection agency that interposes itself between the attorney and the client is engaged in the unauthorized practice of law).

### C.   Sunrise's Engagement in the Unauthorized Practice of Law Prevents any Attorney-Client Privilege from Attaching

"[C]ommunications are not privileged merely because an individual provides law-related services if the client should have known the person was not authorized to practice law." 2 CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE § 183, at 311 (2d ed.1994)(footnote omitted).  Under the fraud exception to the privilege, "the privilege 'does not extend to communications' made for the purpose of getting advice for the commission of a crime or fraud.." *United States v. Zolin,* 491 U.S. 554, 563, 109 S.Ct. 2619, 2626, 105 L.Ed.2d 469 (1989) (citation omitted).  Though practicing law without a license is a crime in Maryland it is not a crime in the District of Columbia.  *In re Mbakpuo*, 829 A.2d 217 (D.C. 2003).  However, fraud is a recognized illegal act in the District.

Court Rule 49 was adopted to prohibit persons who are not members of the bar from engaging in the practice of law, and it defines the "practice of law" in order to delineate functions that non-lawyers cannot lawfully perform.  Furnishing attorneys….to render the legal services described in subparagraphs (a) through (e) is one on those functions that a non-attorney cannot legally perform yet Sunrise Credit did just that by allegedly "retain[ing]" MRA to possibly provide legal services and therefore violated Court Rule 49.

Also see *J.H. Marshall & Associates, Inc. v. Burleson*, 313 A.2d 587, 595 (D.C. 1973):

> A collection agency cannot properly interpose itself between a creditor and an attorney seeking to collect the creditor's claim. To do so either directly or indirectly, by an assignment or otherwise, has been held to be the unauthorized practice of law.

As such, Sunrise Credit cannot interpose itself between the alleged creditor (Arrowood) and MRA as it did here because Sunrise Credit is a lay collection agency and not an attorney or a law firm. Arrowood was keenly aware that Sunrise Credit was not a law firm when it made all the communications that are the subject of this suit therefore Arrowood had no reasonable expectation of the confidentiality that is indicative of an attorney-client relationship.

The unauthorized practice of law is relevant to whether attorney-client privilege applies because the elements for invocation of attorney-client privilege are not met in a situation where the client is committing an illegal act. In such a case, 1) there is no confidentiality; and 2) if Sunrise is prohibited from acting as an agent to Arrowood based on the illegality of the relationship, the basis upon which the trial court concludes that the communications are privileged cannot be sustained; and 3) privilege does not extend to communications made for the purpose of getting advice for commission of fraud.

If Sunrise is legally prohibited from acting in the capacity of agent for purposes of legal services based on ethical rules and case precedent then it is an

unrelated party and either attorney-client privilege never attached because the element of confidentiality is not met or privilege is voluntarily waived by Arrowood due to its interposing of Sunrise. The voluntary inclusion of Sunrise by Arrowood in the alleged attorney-client relationship between Arrowood and the Defendant or any alleged communications to Sunrise by Arrowood that were subsequently relayed to the Defendant 1) vitiates the notion that said communications were intended to be confidential within the meaning of the privilege; and/or 2) waives any attorney-client privilege as to the subject communications because Sunrise is a third-party and not an agent; and 3) Sunrise engaged in fraud by practicing law without a license and the communications at issue were made in furtherance of the fraud and thus are not privileged.

There is no credible evidence in the record, and it is MRA's burden to prove that the privilege exists, establishing that Arrowood ever even communicated directly to the MRA.

### D.    The Trial Court Erred in Not Awarding Plaintiff Attorney Fees In Relation to her Motion to Compel

Rule 37(a)(5)(A) provides that if a motion to compel discovery is "granted-or if the disclosure of the requested discovery is provided after the motion was filed-the Court must, after giving an opportunity to be heard, require the party whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion,

including attorney's fees." Fed.R.Civ.P. 37(a)(5)(A).  See also *Beck v. Test Masters Educ. Servs., Inc*, 289 F.R.D. 374, 381 (D.D.C. 2004)(upholding award of plaintiffs expenses).

Due to MRA's vexatious litigation strategy Plaintiff was forced to file a motion to compel resulting in the Magistrate ordering the MRA to produce most of the information requested by Plaintiff.  Plaintiff spoke with MRA on several occasions through multiple telephone conferences, hearings with the magistrate, and several written communications one of which was a 20-page letter detailing the frivolousness of its objections.  Though the magistrate was able to get through to MRA during the multiple hearing held on discovery, MRA still forced Plaintiff to file a motion to compel where the magistrate granted the majority of plaintiff's requests.  As such, per Rule 37(a)(5)(A) Plaintiff is entitled to her expenses and attorney fees incurred as result of having to file a motion to compel and engage in multiple discovery conferences relating to the disclosures.  Therefore, the trial court erred in denying Plaintiff her attorney fees as such fees are mandatory.

## V.     PLAINTIFF REQUESTS ATTORNEY FEES IN CONNECTION WITH THIS APPEAL

In addition, Plaintiff respectfully requests that she be awarded her attorney fees in connection with this appeal. See, e.g.,*Cohen v. West Haven Board of Police Commissioners*, 638 F.2d 496, 506 (2d Cir. 1980).

## CONCLUSION

Plaintiff respectfully requests this Court to grant the relief requested herein including granting Plaintiff's full Lodestar attorney fee, reverse the trial court decision dismissing Plaintiff's CPPA claim as debt collection is a trade practice. Plaintiff also requests that the Court reverse the trial court order granting summary judgment to MRA and order MRA to produce the documents claimed as privilege in its privilege log.  Finally, Plaintiff requests her attorney fees in connection with the motion to compel.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a)(1), undersigned counsel respectfully requests oral argument in this appeal.

October 24, 2016                    CONSUMER JUSTICE ESQ
                                    /s/Radi Dennis
                                    1750 Pennsylvania Avenue, #27081
                                    Washington, D.C. 20038
                                    Telephone: (202) 579-1243
                                    Facsimile: (202) 644-5270
                                    rdennis@consumerjusticeesq.com
                                    *Counsel for Appellant-Appellee*
                                    *Demetra Baylor*

77

## CERTIFICATE OF COMPLIANCE
## WITH TYPE VOLUME LIMITATIONS

1. This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[X] this brief contains [15,002] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[] this brief uses a monospaced typeface and contains [] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[ ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: October 24, 2016                    CONSUMER JUSTICE ESQ
                                           /s/ Radi Dennis
                                           *Counsel for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of October 2016, I caused this Opening Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF user:

Ronald S. Canter, Esquire

200A Monroe Street, Suite 104
Rockville, Maryland 20850

CONSUMER JUSTICE ESQ
/s/ Radi Dennis
*Counsel for Appellant*